CITY OF ST. LOUIS, Respondent, *v.* ORANGE F. GREEN ET AL., Appellants.

### November 26, 1878.

1. The constitutional provision that no bill shall contain more than one subject, which shall be clearly expressed in its title, is not violated where the general title is not used as a cloak for legislating upon different matters, or where incongruous matters are not joined.

2. The constitutional provisions as to the equality and uniformity of taxation apply to property, and not to taxes on privileges or occupations.

3. It is competent for the Legislature, unless expressly prohibited by the Constitution, to authorize a municipal corporation to require a license from private vehicles using its streets.

4. Where a city charter gives the power to tax and license private vehicles, it gives the power to tax the citizens for their use upon the public streets.

5. That the property used in any particular calling is taxed as property *ad valorem* does not interfere with the right to impose a license-tax on the pursuit.

6. With the question of the reasonableness of a city ordinance, passed in strict pursuance of an express grant of authority, the courts have nothing to do.

7. General words in a city charter are not sufficient to confer upon the city the power to enforce by fine and imprisonment the collection of a tax levied, not as a police regulation, but as a means of revenue.

APPEAL from St. Louis Court of Criminal Correction. *Reversed, and defendants discharged.*

C. C. SIMMONS and R. S. MACDONALD, for appellants.

LEVERETT BELL and SAMUEL ERSKINE, for respondent.

BAKEWELL, J., delivered opinion of the court.

Defendants were charged, in the First District Police Court of the city of St. Louis, with violation of sect. 1 of City Ordinance No. 10494 of that city, approved January 7, 1878, in this: that, being owners and drivers of a certain two-horse wagon, they did, on a day named, drive and cause to be driven said vehicle from place to place on Pine Street and on Twentieth Street, public streets of said city, and did then and there use, and cause to be used, said streets for the purposes of trade and traffic, and for private purposes, without having first paid for and obtained a license so to do from the collector of the city of St. Louis, as required by the provisions of said ordinance.

On conviction, defendants appealed to the Court of Criminal Correction, and there moved to dismiss the proceeding on the following grounds: —

1. The statement does not allege that the defendants drove the wagon or vehicle mentioned in the statement, or caused the same to be driven, or that they used the streets of the said city of St. Louis, or caused the same to be used, as is charged in the complaint, for any other purposes than their own private business and convenience.

2. The statement does not contain or allege any sufficient facts to constitute a cause for this action or prosecution, and is in all respects substantially insufficient and defective.

3. The ordinance referred to and mentioned in the statement is not authorized by any provision of the Constitution

or laws of this State, but is in derogation of both, and is therefore inoperative and void.

The motion was overruled, and the defendants duly excepted.

The trial proceeded, and on behalf of the plaintiff it was proved that the defendants, at the time mentioned in the complaint, were copartners, doing business in the city of St. Louis as manufacturers of cider and vinegar, and were the owners of the wagon in question, and that they drove and caused said wagon to be driven upon the streets of the city, without taking out a license therefor under ordinance 10494, and that said license had been demanded and required of them without avail.

Ordinance 10494 was read in evidence, against the defendants' objection that it was unconstitutional and void. The plaintiff read in evidence the first, fifth, tenth, and fourteenth paragraphs of sect. 26 of art. 3, and sects. 1 and 4 of art. 5 of the city charter, as follows : —

Art. 3, sect. 26. " The mayor and Assembly shall have power within the city, by ordinance not inconsistent with the Constitution, or any law of this State, or this charter, —

"*First*. To assess, levy, and collect all taxes for general and special purposes, on real and personal property and licenses."   *   *   *

"*Fifth*. To license, tax, and regulate   *   *   *   hackney carriages, private carriages, barouches, buggies, wagons, omnibuses, carts, drays, and other vehicles, and all other business, trades, avocations, or professions whatever ;   *   *   *   to license, tax, regulate or suppress all occupations, professions, and trades not heretofore enumerated, of whatever name and character."

"*Tenth*. To impose, collect, and enforce fines, forfeitures, and penalties for the breach of any city ordinance. Any offender who shall neglect or refuse to pay any fine, penalty, and costs that may have been imposed upon him or her shall be committed to the work-house, or, in case of

women, in such other places as for them may be provided, until such fine, penalty, and costs be fully paid : *Provided*, that no such imprisonment shall exceed six months for any one offence.  Every person so committed to the work-house, or such other place aforesaid, shall be required to work for the city at such labor as his or her health and strength will permit, within or without said work-house, or other place, not exceeding ten hours each working day ; and for such work the person so employed shall be allowed, exclusive of his or her board, fifty cents per day for each day's work, on account of said fine and costs."

"*Fourteenth.* Finally, to pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient in maintaining the peace, good government, health, and welfare of the city, its trade, commerce, and manufactures, and to enforce the same by fines and penalties not exceeding five hundred dollars, and by forfeiture not exceeding one thousand dollars."   *   *   *

"Art. 5, sect. 1. For the support of the government of the city, the improvement thereof, and the payment of the public debt, the Municipal Assembly shall, by ordinance, annually levy and collect taxes on all subjects and objects of taxation, and all property within the city made taxable by law for State purposes ; and shall establish the rates thereof, as follows :"   *   *   *

" Sect. 4. The Assembly shall also provide by ordinance for the levy and collection of all other taxes, licenses, wharfages, and other dues of every description, and to fix the penalties for neglect or refusal to pay the same according to law and ordinance."

At the close of plaintiff's case, the defendants asked the court to declare that, upon the evidence, they were not guilty ; which instruction was refused by the court, and defendants duly excepted.

On the part of the defendants, testimony was given to show that the defendants offered to include the wagon in

question in the return of the property of the firm for general taxation, and that it was stricken out by the assessor; also, that said wagon was used by the firm on the streets of the city for the delivery of cider, etc., to their customers, and was never used to do hauling for hire or compensation. Defendants offered to prove that during the time covered by the prosecution the firm was doing business in the city of St. Louis under a manufacturer's State license and a manufacturer's city license and a merchant's license; and upon plaintiff's objection the evidence was excluded, and defendants excepted. It also appeared that the value of the wagon was stricken out from the return made for the manufacturer's city license.

The case was submitted to the court, a jury having been waived, and the judgment of the Police Court was affirmed, and the defendants were ordered to pay to the city of St. Louis a fine of $10 and costs. A motion for a new trial was overruled; and defendants then moved in arrest, on the ground that the statement filed by the city attorney is insufficient, and because the ordinance in question is illegal and inoperative so far as it attempts to impose a tax or require a license for the vehicle in question. This motion being overruled, defendants appeal.

1. It is contended that the ordinance under which defendants were convicted violates the constitutional provision that no bill shall contain more than one subject, which shall be clearly expressed in its title. Const., art. 4 sect. 28; City Charter, art. 3, sect. 13.

The title expresses the subject-matter of the ordinance to be the licensing of vehicles and the fixing the rates of the same. It provides for the imposition of the license, the regulation of vehicles driven in the night, the fixing rates of charges for the use of vehicles, and the licensing of drivers. But we do not perceive that any incongruous matters are here joined. The general title is not used as a cloak for legislating in one bill upon matters which cannot be con-

sidered, by fair intendment, to have a proper connection. The constitutional provision is intended to prevent fraud, but is not intended to embarrass fair and honest legislation. *St. Louis* v. *Tiefel*, 42 Mo. 578. We see nothing in this objection.

2. It is insisted that the ordinance violates the constitutional provisions that all property subject to taxation shall be taxed in proportion to its value, and that taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws. Const. Mo., art. 9, sects. 3, 4.

The General Assembly, in the charter of the city of St. Louis, has expressly given it the power to license, tax, and regulate a variety of trades, occupations, and articles of commerce and property, among which are private carriages.

The constitutional provision that taxation upon property shall be in proportion to its value, has, in some form or other, been embodied in the Constitution of this State since 1820, and has always been regarded as mandatory on the General Assembly. *Hamilton* v. *St. Louis County Court*, 15 Mo. 20 ; *The State* v. *North*, 27 Mo. 464.

A similar provision is to be found in the organic law of many, perhaps most, if not all, of the States of the Union. There are some taxes, however, which are not, and cannot be, assessed according to the value of property. And there is perhaps no State which does not levy other taxes than those imposed upon property. Every burden imposed for revenue purposes is levied under the taxing power, by whatever name the tax is called. License-fees, when for revenue, tolls, polls, taxation of money, and of corporations in proportion to their capital stock, are instances of special cases of taxes which are regarded as exempted by implication from the constitutional rules as to *ad valorem* assessments. 2 Dill. on Mun. Corp. ; *Glasgow* v. *Rowse*, 43 Mo. 490 ; *Crow* v.

*The State*, 14 Mo. 273; *The State* v. *North*, *supra*; *The State* v. *Welton*, 55 Mo. 290.

It is therefore a mistake to suppose that the constitutional provisions in question include every species of taxation. These provisions as to equality and uniformity of taxation apply to property alone, not to taxes on privileges or occupations, or on the exercise of a civil right.

The substance, not the form of the tax is to be regarded in ascertaining whether the tax is upon property or upon a privilege connected with property. The tax under consideration is a license-tax. The imposition of such a tax may be referred to the taxing power or to the police power of the State, — to either or to both; to the police power alone if the object is merely to regulate, and the amount received merely pays the expenses of enforcing the regulations, and to the taxing power alone if its main object is revenue.

The object of license laws is to enforce upon the residents of the State, or of a municipality, the observance of the maxim, *Sic utere tuo ut alienum non lœdas.* Laws of inspection, laws regulating drinks, markets, occupations, amusements, and vehicles are the ordinary examples of its exercise. This mode of taxation is convenient, and, whether it be mentioned in the Constitution or not, the provisions as to equality and uniformity do not apply to a license-tax. Burr. on Tax., sect. 77.

That a municipal corporation may have authority to tax vehicles belonging to the citizens of the corporation, or to any persons carrying on business within its limits, in the sense that such a corporation may tax the use of the vehicle, has been repeatedly held. *Chess* v. *Birmingham*, 1 Grant, 438; *Bennett* v. *Birmingham*, 31 Pa. St. 16; *Gartside* v. *East St. Louis*, 43 Ill. 47.

Nor am I aware of any case in which the right of the Legislature to delegate this power to a municipal corporation has been denied. And the fact that the vehicle is not

let out for hire, that it is not employed to earn money or to carry goods, can make no difference, if the power to license and tax and regulate private vehicles is expressly given in the charter.   It is even held that the amusements of people may be taxed.   Thus, in Maryland, the Legislature imposed a license-tax upon persons keeping or exhibiting for use a billiard-table.   A club keeping a private billiard-table was held liable for this tax.   The court said that it was within the power of the State to tax the amusements of the people, either for revenue or as a police regulation.   *Germania* v. *The State*, 7 Md. 5 ; *Sears* v. *West*, 1 Murph. (N. C.) 291.   And with the judicious exercise of this power in any particular case the courts have nothing to do.

Nor does the fact that property used in any particular calling is taxed as property *ad volorem*, at all interfere·with the right to impose a license-tax on the pursuit.   *Lunt's Case*, 6 Greenl. 412.

That the legislature of a State may, unless expressly restrained by the constitution, authorize a municipal corporation to levy a tax upon, or require a license from, persons using the paved streets of a city, for the purpose of keeping them in repair, seems to be the recognized doctrine of the cases cited above.   2 Dill. on Mun. Corp. 706.

That the streets of the city are highways of the State, and therefore public roads which every citizen has a right to use, is a valid argument against stopping or unreasonably hindering travel over the streets, but it is no argument at all against subjecting travel over those streets to rules and regulations ; and it is surely no argument against a regulation which the corporation has imposed by express permission of, and in virtue of a special grant of power from, the Legislature.

The rule of the road is an instance of a regulation imposed upon travel ; so are ordinances regulating the rate of speed, and by-laws, such as are enforced by many munic-

ipalities, regulating the weight of the load, or the width of the tire of wheels. A public highway is open for cattle, but the town may prohibit the driving of cattle on its streets at certain hours, and may even prohibit the driving of cattle on certain streets in droves at any time.

The Legislature has the power to authorize a turnpike company to lay out their road on a common public highway, and the turnpike does not cease to be still a highway and a public easement because toll is demanded. Ang. on Highw., sect. 8.

Toll is the price of the privilege of travel over that particular highway, and it is a *quid pro quo*. It rests on the principle that he who receives the toll does or has done something as an equivalent to him who pays it. Every traveller has the right to use the turnpike as any other highway, but he must pay the toll. It is even held in Pennsylvania (*Stormpfeltz* v. *Turnpike Co.*, 13 Pa. St. 559) that it is unquestionably in the power of the Legislature to establish a toll-gate in the public street of a city, by virtue of its right of eminent domain; that there is nothing in the Bill of Rights against such an exercise of power; that there is nothing in the street of a town to make it greater than a rural highway, except convenience and density of population, and these do not restrain the power of the Legislature. The obligation of cities to open and repair streets does not interpose any barrier against the right of the sovereign power to regulate its highways, and the streets of a town are nothing more. *A fortiori,* then, the Legislature can authorize a municipality to levy a toll upon its own citizens for a particular use of its streets.

Under the power expressly given to the city of St. Louis in its charter, it becomes immaterial, in considering the question of the validity of license-tax itself, whether the licensing of private carriages be referred to the police power or to the taxing power, since both are conferred upon the city by the State.

It is, apparently, in the case before us, an exaction with a view to revenue. The power of taxation could not, it is true, be assumed by a corporation unless the charter plainly conferred it. 11 Mich. 54, 347. But the charter, in so many words, gives the power to tax and license private vehicles, and this clause is clearly intended to give the power to tax the citizen owning the vehicle for the use of his carriage upon the public streets.

The argument that the provisions of the charter authorizing a license-tax on private vehicles is void as being in violation of the natural rights of the citizen, even if well founded, would be of no avail. A court cannot declare a statutory provision unconstitutional and void because it may regard it as oppressive and unjust, unless it can be shown that the supposed injustice is prohibited, or the violated right protected by the Constitution. Cooley's Const. Lim. 164. The courts cannot declare statutes void because of their impolicy. The Legislature of the State has seen fit to authorize the city of St. Louis to tax public and private vehicles, on the principle, probably, that *qui sentit commodum sentire debet et onus:* that those who mainly wear out the streets should mainly pay for keeping them in repair. The tax being general and uniform as to each class of vehicles named in the ordinance taxing all wheeled carriages, and endeavoring at least to graduate the charge so that that kind of carriage which most wears out the streets shall pay the most, and those kinds which are less destructive to the pavement shall pay less, according to their kind, it does not appear how such a tax is unconstitutional on any ground of inequality, any more than is a tax on billiard-tables which are all taxed alike though differing very much in value. The tax being imposed for the purpose of paying the corporation for the wear and tear of its streets by wheeled vehicles, what would seem unreasonable would be to graduate the license by the value of the carriage, which

has nothing whatever to do with its capacity for wearing out a pavement. As the law is, the lowest tax is $2 a year, imposed upon a hand-cart; the next, $3 for a buggy; and so on, till we reach a six-horse omnibus, which has to pay $30 a year for its license. There seems nothing shocking to the natural sense of justice in this. Nor does such a license impose any very serious restrictions upon the use of the streets. The ordinary revenue-tax which falls directly upon the carriage is, and by law must be, proportioned to the value of the thing taxed. But this city tax is not supposed to fall directly upon the carriage. The constitutional provision that all property subject to taxation in the State shall be taxed according to its value, is undoubtedly binding upon the legislative body when it exercises the taxing power; but this provision is not violated when, as in the case at bar, the tax is not a tax precisely upon the object itself, but rather upon the exercise of the civil right of using that object.

The tax, as we have seen, is called in the ordinance a "license-tax," and is imposed only upon those carriages using the streets; and it is imposed upon them by classes, *each class being equally taxed.* If a man should have a carriage which he did not use on the streets of St. Louis, he would be subject to no penalty for not taking out a carriage-license. The tax, then, is not a tax upon the carriage as property, but upon the right to use the carriage on the streets of the municipality imposing it. And though imposed for revenue, and not for police purposes at all, it is a tax of the nature of a license, because it is a permission to do that which, after the passage of the ordinance, it becomes unlawful to do without having obtained the permission.

The conclusion is that the tax in question, being expressly authorized by the Legislature, and not being forbidden by the organic law of the State, is therefore not void, but has

the force of law ; and if it be oppressive, the remedy lies with the General Assembly and the Municipal Council, and not with the courts.  *St. Paul* v. *Colter*, 12 Minn. 49.

3. But whilst we hold the tax upon private carriages to be valid, we do not think that so much of the ordinance as authorizes the conviction for a misdemeanor and the punishment by fine of any owner or driver of an unlicensed public vehicle can be sustained.  It is quite settled, both in England and in this country, that in the absence of an express statute, no by-law can be enforced by imprisonment of the offender or forfeiture of his goods.  In this country, it is not unusual to provide in the charter of a municipal corporation, that, if fines for the violation of its ordinances are not paid, the offender may be sent to jail for a limited period, and in respect to some public offences against good order, the power to imprison, in the first instance, is sometimes given ; and summary convictions for such offences are sustained, and are not supposed to be in violation of the provisions of Magna Charta in regard to trial by jury, which are adopted into the constitutions of the several States of the Union.  *Byers* v. *The Commonwealth*, 42 Pa. St. 89.

But in all cases it will be found that the fine, forfeiture, or imprisonment is inflicted for the violation of some municipal regulation whose enforcement regards the good morals of the community.  The violation must involve a criminal or *quasi*-criminal offence ; not, of course, that the intention had anything to do with the question of criminality, but the regulation violated must be one imposed at least with a view to preserving morals and good order.  The selling of liquor, keeping open houses of amusement, running races, playing games of chance, — these things may all be perfectly innocent, but in large communities they are liable to be abused, and are abused, to the great injury of public morals ; and when tippling-houses, play-houses, billiard-rooms, and such places are licensed, the carrying them on without a license is an immoral act, and as such it

may be punished. So, it was held that a municipality might enforce by fine the use of weights. and measures sealed by inspectors, and that the payment of the fine might be enforced by summary commitment; but on the express ground that the neglect of such a provision in regard to weights and measures would open the door to the grossest frauds upon the citizens. *Huddleson* v. *Ruffin*, 6 Ohio St. 604. So in Louisiana, where a tax of $250 was assessed against all who board or rent rooms to lewd women, it was held that a provision of a city ordinance imposing a penalty on all who set up such an occupation without taking out a license was valid, because this would be a mere police regulation, such as the police and good order of the city might require. *City* v. *Costello*, 14 La. An. 37. But in the same State (*Municipality No. 1* v. *Pance*, 6 La. An. 515) an ordinance imposing a tax of $1 a day on persons selling oysters on any water-craft, and imposing a fine in case of non-payment, was held void, because this was assessing a penalty for non-payment of a tax; whilst it was held that violation of an ordinance regulating the quality and weight of bread might be punished by a penalty in money and forfeiture, because it partook of the nature of a crime. *Guillott* v. *New Orleans*, 12 La. An. 432.

In Pennsylvania, an act was passed authorizing the municipality to require by ordinance that the owners of certain vehicles, and the owners of places of amusement, auctioneers, vendors of merchandise, and others, should be registered and pay a license. An ordinance of the city was accordingly passed, requiring merchants and others named in the ordinance to take out a license, and imposing the punishment of fine and imprisonment for non-payment of the license-fee required. Many persons engaged in various branches of industry named in the ordinance filed a bill to enjoin the city from proceeding to enforce payment of the license-tax thus assessed against them. The court granted the relief prayed for, on the ground that infliction of such a

penalty for the non-payment of the tax, not being expressly authorized by the Legislature, could not be supported; saying that no authority could be cited or precedent found to warrant such an action under a similar grant of power. *Butler's Appeal*, 73 Pa. St. 453. And yet it is supposed that the city in which the ordinance was enacted had in its charter the provision, usual in the charter of all large cities, authorizing generally the punishment by fine and imprisonment for violation of the city ordinances.

It is true that the charter of the city of St. Louis (art. 3, sect. 10) gives to the city power to impose and collect fines, forfeitures, and penalties for the breach of any city ordinance, and to imprison the offender for a term of not more than six months; and also (art. 3, sect. 14) to enforce by fines and penalties not exceeding $500, and by forfeiture not exceeding $1,000, all ordinances not inconsistent with the charter, regarding the peace, good government, health, and welfare of the city, its trade, commerce, and manufactures; and (art. 5, sect. 4) " to provide for the levy and collection of all other taxes, license, wharfage, and other dues of every description, and to fix the penalties for neglect or refusal to pay the same;" but we do not think it was the intention of the Legislature, by this general language, to give to the city any power to send a citizen to the chain-gang simply because he has neglected or has it not in his power to pay a tax imposed, not as a police regulation for the health, good order, morals, or comfort of the city, but purely and simply as a means of increasing the revenue.

It is necessary that ordinances looking to the peace, good order, and health of the community should be obeyed; and therefore that the municipality should have the power of inflicting punishment for the violation. It is well understood that the ignorance of these ordinances can be no excuse for their violation; and it may therefore happen that an orderly and respectable citizen, unable to pay a fine,

may sometimes be subjected to a degrading punishment for an offence which involves no moral delinquency and no intentional violation of law. This is unavoidable, and is a condition of society, human nature being what it is. But it is unheard of that the General Assembly of any State should give to a municipal corporation the power to inflict a degrading punishment upon any of its members who may not be able to pay a tax. We do not say that the Legislature could not pass such a law; but we do not believe that it has done so, and we have every confidence that it never will. The exercise of such a power would be so grievous that courts would not conclude that the Legislature intended to grant it, unless the enactment was so clear as to leave no reasonable doubt. If the Legislature, in terms, should confer upon a municipal corporation the power to fine and imprison for non-payment of taxes, an ordinance which should strictly pursue the grant of such power could not be impeached; because what the Legislature distinctly says may be done, cannot be set aside by the courts as unreasonable. But where the power to legislate on a given subject is conferred, and the mode of its exercise is not prescribed, then the ordinance passed in pursuance thereof must be a reasonable exercise of the power, or it will be pronounced invalid. *Peoria* v. *Calhoun*, 29 Ill. 317; *St. Paul* v. *Colter*, 12 Minn. 41. Where the Legislature gives the Municipal Assembly power to fix penalties for the neglect to pay taxes, licenses, wharfage, and other dues, it would seem that the taxes spoken of are such licenses or imposts as are imposed with a view to good order, health, or morals, and the non-payment of which may well be made penal by city ordinance, because of its supposed evil consequences to society; but if the contrary view should be entertained, then the imposition of a fine, to be followed by imprisonment, is an unreasonable exercise of the power of fixing a penalty for non-payment of a mere tax.

The city counsellor contends that a license-tax not being

a debt, no action would lie to recover it, and its payment can only be enforced by inflicting a fine, to be worked out in jail if not paid. In the absence of any form of action provided in the charter, there is no difficulty in holding that a fine inflicted for the violation of a municipal ordinance might be recovered by an action of debt or *assumpsit*. At common law, *assumpsit* may be maintained for the breach of any duty which defendant has been legally liable to perform in favor of plaintiff, because the law implies a promise to perform the particular act. Where the penalty was for a sum certain, in the nature of liquidated damages, debt would lie to recover the amount. Dill. on Mun. Corp., sects. 342, 343.

The State law in regard to merchants' licenses, and the numerous cases from our reports in support of these and similiar enactments cited by learned counsel for the city, are not in point. We do not dispute the power of the General Assembly to inflict a penalty for the non-payment of a revenue-tax pure and simple. What we do say is, that when a municipal assembly does so, and does so under the incidental powers of the corporation, or under a grant of power general in its nature, the ordinance is liable to be impeached as invalid, and may be declared void by the courts if it be found to be unreasonable, oppressive, partial in its operation, in contravention of common rights and particularly if it be inconsistent with the laws and policy of the State, and the general principles of the common law of the land relating to the liberty of the subject or the rights of private property.

We are referred to *The City v. Woodruff*, 4 Mo. App. 169, in which a conviction for using a watering-cart without a license was sustained. We have only to say that the point was not made in that case. The attention of the court was called there merely to the question whether the city had any right, under the charter, to require a license from those using the streets with vehicles which are a direct source of

revenue to the owners from the manner in which they are employed. Our opinion was not asked as to the legality of the means employed to collect the tax. In this case the point is made, and it is our duty to pass upon it.

The sections of the ordinance under consideration which provide for imposing a fine for non-payment of a license upon a private vehicle, which fine, when imposed, must, under the proceedings authorized by the charter, and under which defendants were convicted, lead to their imprisonment in the event of non-payment of the fine, are, in our judgment, void for want of power in the Municipal Assembly to make the non-payment of a purely revenue tax a misdemeanor punishable by fine and imprisonment.

The judgment of the Court of Criminal Correction is reversed and the defendants are discharged. All the judges concur.

NOTE. — This case was omitted in its order in these reports; and is now published because, upon the main points in the case, the Supreme Court refers to this opinion as expressing its own views. — [REPORTER.