AT THE

## APRIL TERM, 1879.

---

CITY OF ST. LOUIS, *Appellant*, v. STERNBERG.

1. **Lawyers' License Tax:** ST. LOUIS CHARTER POWERS. Section 20, of article 10, of the constitution of 1875, by necessary implication, authorized the board of freeholders to make proper provision in the charter which they framed for the city of St. Louis, for the raising of revenue, and to that end authorized them to incorporate the provision which conferred upon the city the power to impose a license tax upon lawyers. They needed no additional authorization by the General Assembly.

2. **The State's right to tax Lawyers.** The power of the State to impose a license tax on lawyers has been beyond question ever since the decision of this court in *The State v. Simmons*, 12 Mo. 268.

3. **Lawyers' License Tax:** UNIFORMITY OF TAXATION. The ordinance of the city of St. Louis imposing a tax of $25 a year on every lawyer in the city without reference to the value of his practice, is not obnoxious to the constitutional provision which requires that

taxation shall be uniform. When a municipality having power to tax callings, trades and professions, taxes alike all persons engaged in the same business, such taxation is equal and uniform. *American Union Express Co. v. St. Joseph*, 66 Mo. 675.

4. ———: CRIMINAL PROSECUTION TO ENFORCE. The city of St. Louis had the right, under its charter, to impose, and, by criminal prosecution, to enforce penalties for the violation of the ordinance prohibiting lawyers from practicing their profession without paying a license tax.

## Appeal from St. Louis Court of Appeals.

The charter of the city of St. Louis proposed by the board of freeholders and adopted by a vote of the people in accordance with the provisions of section 20, article 10, of the constitution of 1875, contained the following, among other provisions:

Article 3, section 26. The mayor and assembly shall have power within the city, by ordinance not inconsistent with the constitution or any law of the State, or of the charter: *First*, To assess, levy and collect all taxes for general and special purposes, on real and personal property and licenses;  *  *  *Fifth*, To license, tax and regulate lawyers, &c.  *.  *  *Tenth*, To impose, collect and enforce fines, forfeitures and penalties for the breach of any city ordinance,  *  *  *Fourteenth*, To pass all such ordinances, not inconsistent with the provisions of this charter, or the laws of the State, as may be expedient in maintaining the peace, good government, health and welfare of the city, its trade, commerce and manufactures, and to enforce the same by fines and penalties not exceeding $500, and by forfeitures not exceeding $1,000.  *  *

Article 5, sec. 1. For the support of the government of the city, the improvement thereof, and the payment of the public debt, the municipal assembly shall, by ordinance, annually levy and collect taxes on all subjects and objects of taxation.  *  *

Sec. 4. The assembly shall also provide, by ordinance, for the levy and collection of all other taxes, licenses,

wharfages, and other dues of every description, and to fix the penalties for neglect or refusal to pay the same according to law and ordinance.

*Leverett Bell* and *Samuel Erskine* for appellant.

The State has power to license, tax and regulate lawyers. *State v. Simmons,* 12 Mo. 271; *Stewart v. Potts,* 49 Miss. 749. This power may be delegated to a municipal corporation. *City v. Laughlin,* 49 Mo. 559; *Goldthwaite v. Montgomery,* 50 Ala. 486; *Mayor v. Hines,* 53 Ga. 616; *Ould v. Richmond,* 23 Gratt. (Va.) 464. The charter of the city of St. Louis is a grant of power to the city by the State. Under the charter, the city is in express terms authorized to license, tax and regulate lawyers.

The city is authorized to impose, collect and enforce fines, forfeitures and penalties for the breach of any city ordinance. It is, therefore, authorized to impose, and provide for the collection of a fine from one who shall, in violation of ordinance, practice law without a license. This is not a proceeding to collect the license tax. It is to collect the penalty for doing business without a license. One may practice law for a year by taking a license from the city and paying $25 therefor; or, if he prefer to continue the practice without a city license, he may indulge his pleasure, but will be subjected to the payment of appropriate penalties for so doing. Payment of the penalty does not entitle the offender to a license. He is still required to pay for a license, and a separate penalty for every distinct infraction of the ordinance may be imposed. The ordinance does not purport to make the non-payment of the license fee a misdemeanor. It simply enacts that one carrying on the business without a license, shall be guilty of a misdemeanor, and shall be fined.

We have nothing to do here with the inquiry whether the practice of the law is *malum in se*; nor whether the act of one in continuing the practice of the law in the city of St. Louis, without obtaining a city license therefor, in-

volves any moral delinquency or evil intent. This case is not to be determined by principles governing the case of one charged with the commission of a felony. In the latter case, of course, there must be present a criminal intent. But, in dealing with a breach of a city ordinance, such as is here presented, the intent of the defendant is utterly irrelevant to the case. If one fails to observe the ordinance, a penalty accrues to the city which may be sued for and recovered by the city, and it makes no difference whether the failure to comply with the ordinance arose from accident or design. *State v. Jamison,* 23 Mo. 330; *State v. Rucker,* 24 Mo. 557; *State v. Myers,* 63 Mo. 324. As early as 1847, it was held that a proceeding of this character is an action of debt to recover the fine or penalty imposed by ordinance. *City v. Smith,* 10 Mo. 438. And, although many cases of a like character to the one here presented, appear in the Missouri Reports, in none of them has it been suggested or held that an ordinance imposing a license tax is invalid for the reasons urged by the court of appeals. See *City v. Jackson,* 25 Mo. 37; *City v. Weber,* 44 Mo. 547; *City v. Laughlin,* 49 Mo. 559; *City v. Sanguinet,* 49 Mo. 581; *City v. Manf. Sav. Bank,* 49 Mo. 574; *City v. Life Association,* 53 Mo. 466; *Cincinnati v. Buckingham,* 10 Ohio 257; *White v. Kent,* 11 Ohio St. 550; *Vandine, petitioner,* 6 Pick. 187; *Nightingale, petitioner,* 11 Pick. 167; *Shelton v. Mobile,* 30 Ala. 540; *Chilvers v. People,* 11 Mich. 43; *Brooklyn v. Cleves,* Lalor's Rep. 231; *Buffalo v. Webster,* 10 Wend. 99.

*McGinniss & Searle* for respondent.

1. The lawyer's license provided in this ordinance is either in the exercise of the police power of the city or for purposes of revenue alone. It cannot be the former, for lawyers are not amenable to the city of St. Louis for their professional conduct, nor can they be made so. If it be the latter, then it must be in pursuance of power "plainly

and unmistakably conferred." But it is nowhere expressly conferred. If conferred at all, it must be by necessary implication from the grant of power to the freeholders "to propose a scheme," &c. But such an implication cannot be maintained against the express declarations of the constitution that revenue laws shall be general, and that the charter of the city " must be in harmony with and subject to the constitution and the laws of the State." And in any event the charter cannot provide a tax upon lawyers, because the lawyers' right or privilege, as a subject of taxation, is unknown to the laws of the State, except in the " general municipal corporations act," not adopted by St. Louis. Dillon on Munic. Corp., §§ 291, 295, 605, 609; *State v. Hoboken*, 30 N. J. Law 225; *Ward v. Maryland*, 12 Wall. 418; Cooley's Con. Lim., 291, 495, 517, 518; *Savannah v. Hartridge*, 8 Ga. 23, 26; Constitution of Mo,, art. 10, §§ 1, 3, 10; art. 9, § 25; *Ruggles v. Collier*, 43 Mo. 375; *St. Louis v. Clemens*, 43 Mo. 404; *Hitchcock v. St. Louis*, 49 Mo. 488; *St. Louis v. Laughlin*, 49 Mo. 559; Dillon on Munic. Corp., §§ 55, 300; *Lot v. Ross*, 38 Ala. 156, 161.

2. Conceding to the freeholders the power to authorize taxing by charter provision, how further stands this ordinance in the light of the constitution and laws of the State ? If it imposes this license and tax in exercise of its police power, it is void, because lawyers are not subjects of police regulations. If for revenue purposes only, then it is in violation of section 3, article 10, of the constitution, as utterly ignoring the rule of uniformity. If it be not strictly speaking a license, or privilege tax, it is strictly speaking a tax for revenue; and being such, there is no justice in exacting the same tax from a lawyer whose income amounts to a few hundred dollars per annum, and one whose income amounts to as many thousand. Cooley's Con. Lim., §§ 495, 201; *Ould v. Richmond*, 23 Gratt. 464.

3. The lawyer's profession is an absolute and vested right, conferred upon him by the judgment of the court— a right of which he cannot be deprived at the pleasure of

the court or the command of the Legislature—a right of which he may be deprived only by the judgment of the court for professional misconduct, and after an opportunity to be heard.   Consequently if a license tax may be exacted of him, he cannot be prohibited from enjoying such vested right because his tax is unpaid.   If the tax cannot be collected otherwise than prohibiting him from pursuing his practice, the city has no remedy against him.   Moreover, his status as an officer of court is fixed by the constitution and laws of the State, and the attempt of the city, under its assumption of the licensing and taxing power, to destroy his status therein, would be in violation of the constitution and laws of the State; and this the constitution forbids.   Moreover, lawyers having obtained their licenses from the courts, as prescribed by the statutes of the State, to practice in their profession, cannot be required by the city of St. Louis to obtain an annual license from the city collector to enable them to continue their practice.   This would be, in effect, an annulment of their original license. It would be the destruction of a vested right, if not an "impairing of the obligation of a contract" within the prohibition of the constitution of the United States.   *Law-yers' Tax Cases*, 8 Heisk. (Tenn.) 634 ; *Ex parte Garland*, 4 Wall. 333 ; *Murphy and Glover, Test Oath Cases*, 41 Mo. 339 ; *In the matter of Cooper*, 22 N. Y. 81 ; *Ould v. Richmond*, 23 Gratt. 469 ; *Butler's Appeal*, 73 Pa. St. 452.

4.   Lawyers are officers in the judicial department of the government, and the assumption of the taxing power as to them would be an unwarrantable and dangerous legislative interference with a co-ordinate branch of the government, the tendency of which would be to disturb the balance in our political organization.   The danger and tendency of such interference is predicated upon the ground that the power to tax implies a power to destroy.   The existence of the power being conceded, the extent of its exercise is a question entirely of legislative discretion.   It might be so exercised that the legal profession would be

virtually taxed out of existence, thereby greatly impairing, if not utterly destroying the efficiency of the courts and impeding the administration of justice.

NORTON, J.—This proceeding was commenced in the police court of the city of St. Louis, upon the following complaint:

City of St. Louis, Missouri, September 29th, 1877. Theodore Sternberg, to the city of St. Louis, Dr. To $50 for the violation of sections 1 and 3, of an ordinance of said city, entitled, An ordinance, No. 10,368, concerning lawyers, and fixing the amount of their license, approved September 7th, 1877, in this, to-wit: In the city of St. Louis, and State of Missouri, on the 26th day of September, 1877, and on divers other days and times, between said date and the 7th day of September, 1877, did, then and there, being a lawyer, exercise the business and profession of an attorney and counselor at law, and did enter upon and continue the exercise and practice of his profession as aforesaid, and did practice law and plead for other parties in the professional capacity aforesaid, in the courts of justice, within said city of St. Louis, without first having obtained a license therefor from the collector of said city continuing in force, contrary to the ordinance in such case, made and provided. On information of M. A. Rosenblatt, city collector.

SAMUEL ERSKINE,<br>
City Attorney of the city of St. Louis.

The defendant duly appeared, and an agreed statement of facts was filed, by which it was conceded that defendant was within the purview of the ordinance, and that he had violated the same, and the case being submitted, judgment was rendered in favor of the city for $25 and costs, and execution ordered therefor. The defendant appealed to the court of criminal correction, and there moved to dismiss the information on many grounds involving the validity of the ordinance, and his motion was overruled

and judgment was rendered in favor of the city for $25 and costs; and by appeal the case was taken by defendant to the St. Louis court of appeals, where the judgment was reversed, from which plaintiff has appealed to this court.

It is claimed by plaintiff that the following ordinance passed by the city of St. Louis on the 7th day of September, 1877, and on which the action is based, justifies the proceeding: Section 1. No person shall exercise, within the city of St. Louis, the business or profession of a lawyer, without a license therefor, as hereinafter provided. Section 2. A lawyer, within the purview of this ordinance, is a person who is put in the place, stead or turn of another, to manage his matters of law, or whose office is to appear for parties to actions and other judicial proceedings, and to prosecute and defend them in their behalf, and whose authority is derived either from a formal warrant of attorney or a mere oral retainer. Section 3. Every lawyer, before entering upon, or continuing the business or practice of his profession in the city of St. Louis, shall obtain from the collector an annual license therefor, for which he shall pay the collector, in advance, the sum of $25. Section 4. Any person who violates any of the provisions of this ordinance shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined not less than $25 nor more than $50 for each offense.

It is contended that the taxing power of the State has never been delegated or conferred upon the city of St.

1. LAWYER'S LI-CENSE TAX: St. Louis charter. powers.
Louis, and that, therefore, the ordinance in question imposing a license tax is void. If the premises thus assumed be well founded, the conclusion deduced necessarily follows, for we give full recognition to the doctrine as laid down in Dillon on Munic. Corp., § 605, that it is a principle universally declared and admitted that municipal corporations can levy no taxes, general or special, upon the inhabitants or their property unless the power be plainly and unmistakably conferred. It is true, as contended by defendant, that the power to tax

has not been delegated to the city of St. Louis by any act of the General Assembly, but plaintiff looks to a higher source of power than is to be found in any legislative enactment, and claims to derive the authority from the constitution itself. A careful examination of the provisions of the constitution which gave rise to the existing government in St. Louis, will, we think, demonstrate that the claim thus made is fully justified. It will be observed that in article 9 of the constitution, under the head of " counties, cities and towns," St. Louis is singled out from all the other cities and towns in the State, and sections 20, 21, 22, 23, 24 and 25, of the article, contain provisions relating exclusively to it. The general purpose that the city might have the power to enlarge its limits and separate itself in a governmental point of view from the county, and have the right as a municipality to govern itself, provided its government should be in subordination to and consistent with the constitution and laws of the State, is manifested throughout the above sections. Section 20, after authorizing the city to enlarge its limits, provides for the election " of a board of thirteen freeholders, whose duty shall be to propose a scheme      *      *      for the government of the city by a charter, which shall always be in harmony with and subject to the constitution and laws of the State, and which shall, among other things, provide for a chief executive and two houses of legislation." It further provides that such charter, when ratified by a majority of the qualified voters, shall become the organic law of the city, and at the end of sixty days thereafter, shall take the place of and supersede the charter of St. Louis, and all the amendments thereof. Section 21 requires all courts to take judicial notice of such scheme and charter when filed in the office of the secretary of State, and among the archives of the city as therein provided. Section 23, among other things, declares that in the adjustment by said scheme of the relations between the city and county, the city shall take upon itself the entire park tax, and in consideration of the city

becoming the proprietor of all the county buildings and property within its enlarged limits, it shall assume the whole of the existing county debt and be exempted from all county taxation."

It is clear, we think, from these sections, that it was the intention of the framers of the constitution that the city of St. Louis might adopt as its organic law a charter containing any or all the provisions then in its charter, and such other provisions as would not be inconsistent with the constitution and laws of the State. That the voters of St. Louis had a right to adopt a charter, cannot be denied; nor can it be disputed that when adopted in conformity with the requirements of the constitution, in sixty days thereafter it superseded and stood in the place of the charter for the government of the city at the time of its adoption; nor can it be questioned that in sixty days after its adoption all special laws relating to St. Louis county, inconsistent therewith, were also superseded.

As neither State, county nor municipal government can be maintained without revenue, and as revenue cannot be raised without the exercise of the taxing power in some form, it would follow as the logical result of defendant's theory that St. Louis would be practically left without any government. It could not be subjected to the county government, because the effect of the scheme was to separate it from the county for governmental purposes; nor could it be governed under the charter in existence before the adoption of the scheme, because that was superseded by the new charter; nor could it be governed under the new charter adopted by the voters, because, as defendant insists, under it no power to tax existed. It certainly could not have been designed to take from St. Louis both the county and city government, which it enjoyed, and leave it without any in a condition of utter chaos and confusion, but on the contrary it must be presumed that the framers of the constitution had in their minds the fact that it was wholly impossible to conduct a city government in a city

like St. Louis without the power of taxation being vested
in those charged with conducting such government.   The
right to adopt a charter necessarily implied the right to
put in it such provisions as would enable the city to main-
tain its government.   The very term charter signifies an
act of incorporation, bestowing rights, powers and privi-
leges, and the only limitation which the constitution au-
thorizing its adoption imposes, is that it shall be in harmony
with the constitution and the laws of the State.   That the
term charter was used in this sense is clear from the fact
that it is declared that " it shall, among other things, pro-
vide for a chief executive and two houses of legislation,"
and that when adopted it should become the organic law
for the government of the city.   Under the theory of de-
fendant the city of St. Louis, after the adoption of the
charter, would have a charter without its bestowing any
powers, rights or privileges, a legislative assembly without
power to pass laws or ordinances, a city with hundreds of
thousands of inhabitants without any municipal govern-
ment, charged with the payment of the park tax and the
debt, both of the city and county of St. Louis, without
authority to impose taxes to raise revenue to pay either the
one or the other.   We cannot give our assent to an inter-
pretation of the sections of the constitution we have ad-
verted to which would bring such results, nor do we believe
them to be susceptible of such meaning.

The defendant, conceding for the argument, that
under the charter the city had the right to exercise the
2. THE STATE'S taxing power, insists that the exercise of it
RIGHT TO TAX
LAWYERS.       in the passage of the ordinance in question
is not warranted by the constitution.   In support of this
view he contends that the State could not exercise such
power, and that, therefore, the city could not, and cites
authorities to show that laws imposing a license tax on law-
yers have been adjudged to be unconstitutional and void.
However this may have been elsewhere decided, the power
of the State to tax all professions has remained unques-

tioned in this State, since the case of the *State v. Simmons,*
12 Mo. 271, the principle of which was followed and ap-
proved in the case of the *City of St. Louis v. Laughlin,* 49
Mo. 559. · We are not disposed to re-open the question,
especially as we think it has been settled, not only in ac-
cordance with reason, but with the weight of authority.

It is also argued that section 26 of the charter under
the head of legislative proceedings, which " declares that
the mayor and assembly shall have power to license, tax
and regulate lawyers," is inconsistent with section 1, arti-
cle 10, section 10, article 10, and section 25, article 9, of
the constitution, and, therefore, void. Section 1, *supra,*
declares that "the taxing power may be exercised by the
General Assembly for State purposes, and by county and
other municipal corporations, under authority granted to
them by the General Assembly for county and other cor-
porate purposes, and section 10 declares that the General
Assembly may, by general laws, vest in the corporate au-
thorities of any county, city or town the power to assess
and collect taxes for county, town or municipal purposes.
It is contended that, inasmuch as under these sections mu-
nicipal corporations can only exercise the power of taxa-
tion when such power is conferred by the Legislature by
general law, and inasmuch as no such general law giving
the power to St. Louis had been passed, section 26, *supra,*
of the charter is void. This argument, we think, is un-
sound in ignoring the fact that the constitution containing
the provisions on which the argument is based also contains
a provision which expressly designates a particular corpo-
ration, viz : the city of St. Louis, and declares that it may
adopt a charter, an act of incorporation for its own gov-
ernment. We perceive no inconsistency between the sec-
tion which authorizes St. Louis to make its own charter
and by necessary implication also authorizes it by virtue
of such charter to exercise the taxing power for municipal
purposes and sections 1 and 10, *supra.* A constitutional
provision delegating such power to a particular municipal-

ity, either expressly or by necessary implication, may well
harmonize with another provision which requires the power
to be delegated to all other municipalities in the State by
general law.  If the power to tax, as we have attempted
to show, has been conferred on the city of St. Louis by the
constitution no additional force could be given to it by an
enactment of a general law giving to it a power it already
possessed.  In view of the clear and lucid argument in
the opinion of Judge Bakewell, of·the St. Louis court of
appeals, touching the points we have been considering, we
deem it unnecessary to add anything further on this branch
of the case.

It is also argued that the ordinance in question is in
violation of section 3, article 10, of the constitution, which
3. LAWYERS' LI-   declares, "That taxes shall be uniform upon
CENSE TAX: uni-   the same classes of subjects within the terri-
formity of taxa-
tion              torial limits of the authority levying the tax."
It is insisted  that the ordinance is obnoxious to the above
requirement  in this, that it demands of every  lawyer the
same amount of  tax without reference either to the income,
emoluments. or profits of his practice as such.   That the
latter might be a more just method of exercising the power
than the former, may not be denied, but such an argument
addresses itself more properly to the municipal assembly
than to us, and we think it is fully answered in the case of
the *Am. Union Ex. Co. v. The City of St. Joseph*, 66 Mo.
675, and *Glasgow v. Rowse*, 43 Mo. 479, where it was held
that when municipalities having the power to tax callings,
trades and professions, tax alike all persons engaged in
the same business, such taxation is equal and uniform.

While concurring in the views expressed under the
first, second and third heads of the opinion of the St. Louis
4. ——: criminal  court of appeals, we cannot give our assent
prosecution to en-
force.            to what is said under the fourth head thereof,
which led to the reversal of the judgment of the court of
criminal correction.  The right of the municipal assembly
to pass an ordinance imposing the license tax being con-

ceded; we think it follows, under section 6, article 3, of the charter, which provides, "that the mayor and assembly shall have power    *    *    by ordinance to impose, collect and enforce fines, forfeitures and penalties for the breach of any city ordinance; to pass all such ordinances not inconsistent with the provisions of the charter or laws of the State,    *    *    and to enforce the same by fines and penalties not exceeding $500, and by forfeiture not exceeding $1,000,"    *    *    that the assembly had the power to pass section 4 of the ordinance which subjects every lawyer who prosecutes his profession, without first taking out a license, to a fine not less than $25 nor more than $50.

Such ordinances have been uniformly upheld when brought to the attention of this court.   In the case of the *City of St. Louis v. Laughlin*, 49 Mo. 559, the defendant was prosecuted for violation of an ordinance in practicing law without a license.   The validity of the ordinance was drawn in question on the sole ground that the Legislature had not, in the charter, delegated to the city the power to pass such an ordinance, it being conceded that if such power had been delegated the city could have passed it. In the case of the *City of St. Louis v. The Manufacturers' Savings Bank*, 49 Mo. 574, the defendant was proceeded against for carrying on the business of banking without a license as required by an ordinance of the city.   A fine was imposed, and on appeal the judgment was affirmed. In the case of. the *City of St. Louis v. Life Association*, 53 Mo. 466, defendant was fined for prosecuting its business without a license, and the judgment of the criminal court was sustained.   The power of municipal corporations to recover fines and penalties from persons conducting business or pursuing avocations without license when such license is required by ordinance, has been upheld in Ohio in the case of *Cincinnati v. Buckingham*, 10 Ohio 257; in Massachusetts in the case of *Vandine, petitioner*, 6 Pick. 187; in Alabama in *Shelton v. Mobile*, 30 Ala. 540; in Mich-

igan in *Chilners v. People*, 11 Mich. 43; in New York in *Brooklyn v. Cleves*, Hill & Denio Rep. Lalor's Sup. 231.

This is not a proceeding on the part of the city to collect the amount of license required by the ordinance, but is instituted to recover a fine for a breach of it committed by defendant in practicing law without such license, and although he may be subjected to the payment of the fine he would not thereby be entitled to the license. The mere fact that defendant did not procure the license does not create the liability, but the fact of his practicing as a lawyer without such license. It was his privilege to decline to pay the $25, the required sum for the license, and it was only when he continued or entered upon such practice without such license that he became liable to a fine. It is, therefore, the collection of the fine, and not the license tax, which is sought to be enforced in this proceeding. Such a proceeding is maintainable under the authority of the *City of Carondelet v. Smith*, 10 Mo. 438. The power exercised by the city in passing the ordinance imposing the fine is analogous to that exercised by the Legislature in requiring merchants to be licensed and subjecting a person pursuing that avocation without license to a fine of not less than $50 nor more than $5,000 for each offense. The avocation of a merchant is not *malum in se*, and such enactments, whether made in the exercise of the police power of the State or otherwise, have always been upheld and enforced by this court. *Austin v. The State*, 10 Mo. 591. No question of evil intent arises in such cases; the essence of the offense consists in pursuing the avocation without license when one is required by law. *State v. Cox*, 32 Mo. 566; *State v. Willis*, 37 Mo. 192; *State v. Whittaker*, 33 Mo. 457; *State v. Jacobs*, 38 Mo. 379; *State v. Rucker*, 24 Mo. 557 . *State v. Myers*, 63 Mo. 324.

It matters not whether the ordinance assailed was passed as a police regulation or otherwise. The question is one of power, and whether the provision of the charter authorizing the passage of such an ordinance was in con-

flict with either the constitution or laws of the State. We think it does not conflict with either. Under the constitution the imposition of a license tax on lawyers has been held, as we have shown, to be a legitimate exercise of the taxing power on the part of the State, and the charter provision does not, therefore, conflict with it, nor does the mere fact that the General Assembly has not exercised such power by passing a general law requiring all lawyers to pay a license tax, and imposing a fine on every one practicing as such without a license, create a conflict between the charter provision and the ordinance passed in virtue of it and any law of the State. If the General Assembly should pass a law declaring that no license should be required of lawyers by any municipal corporation in the State, then such conflict would exist between the charter provision and the law; and section 25, article 9, of the constitution would apply, and the argument of defendant that the charter provision, not being in harmony with the law of the State, was, therefore, obnoxious to that section, would have force.

*Butler's Appeal*, 73 Pa. St. 448, is the only authority to which we have been cited as being in opposition to the views herein expressed. That case is unlike the one before us. It was therein held that no delegation of power was contained in the charter of Wilkesbarre authorizing the city to require a license of the persons complaining. In the case at bar express authority is given in the charter to the municipal assembly to provide for licensing and taxing lawyers. It was also held that, if the power to require the license had been conferred, the ordinance imposing a fine and imprisonment for the non-payment of the license fee was invalid, because there was nothing in the act of incorporation " authorizing the imposition of such a sentence without indictment and trial by jury." In the case before us express authority is given in the charter authorizing the municipal assembly to provide for imposing fines, penalties and forfeitures for breach of ordinances. In *Butler's Ap-*

*peal, supra,* no power was given in the charter of Wilkes-barre to pass either the ordinance requiring the license, or an ordinance imposing fines for the breach of ordinances. In the charter of St. Louis the' power is given to do both.

We are of the opinion that the judgment of the court of appeals should be reversed, and that of the court of criminal correction affirmed, which is accordingly done, with the concurrence of the other judges.

REVERSED.