## THE DENVER CITY RAILWAY COMPANY v. THE CITY OF DENVER.

1. DENVER—TAXATION.

The charter of Denver, which confers upon that city power " exclusively to license, regulate and tax any or all lawful occupations," etc., is sufficient to authorize the city to impose a tax at a sum certain per car upon a company running street cars.

2. CONSTITUTIONAL LAW—TAXATION.

The provision of the constitution (sec. 3, art. 10) relating to uniformity of taxation, applies only to a direct tax upon property, and does not apply to taxation imposed upon privileges and occupations.

3. DENVER—FINES AND PENALTIES.

The city council of Denver has power to make all ordinances which shall be necessary and proper for carrying into execution the power specified in its charter, and to enforce the same by appropriate fines, imprisonment or other penalties. Under this power, it may prescribe a penalty for failure to pay a lawful tax.

*Error to the Court of Appeals.*

Messrs. WOLCOTT & VAILE and Mr. H. F. MAY, for plaintiff in error.

Mr. F. A. WILLIAMS, Mr. G. W. WHITFORD and Mr. A. B. SEAMAN, for defendant in error.

MR. JUSTICE GODDARD delivered the opinion of the court.

On the third day of October, 1889, The Denver City Railway Company instituted this action to restrain the city of Denver and its officers from prosecuting cases against it and its employés for operating its horse cars, in violation of a certain ordinance of the city adopted in 1886, and amended in 1888, which provides, *inter alia*, as follows :

" SECTION 1. It shall be unlawful for any person or persons to hire out, keep or use for hire, or cause to be kept or used for hire, for the carrying or conveying of persons, or run on

established lines within the city limits of the city of Denver, any hackney coach, cab, omnibus, express wagon, herdic coach, *street car*, vehicle or vehicles, carriage or carriages of any description or name whatsoever, without a license first had and obtained so to do."

"SEC. 14. There shall be charged and paid to the city treasurer for the use of the city of Denver, on issuing the said licenses, by the parties to whom they may be granted, the following sums: * * * Second—For all omnibuses and accommodation coaches, herdic coaches and street cars running upon established lines and at stated periods, from place to place within the city, shall be charged for license, each, the sum of ten dollars per annum."

By section 14, as amended in 1888, the license fee for each car was increased from $10.00 to $25.00 per annum. The company averred its willingness to pay a fee of $10.00, as it had theretofore done, but refused to pay the sum of $25.00, on the ground that the latter is unreasonable and in excess of the amount necessary to pay the expenses of police regulation, and is in fact a tax upon its property, and hence unlawful and void. The evidence introduced upon the trial of the cause is not preserved by a bill of exceptions, but the court below made the following findings:

"1. That the license for police regulation does not, under the testimony offered, justify a greater license than $17.50 per car, as heretofore found, but that the wording of the city charter gives the city the right to tax as well as to license for police regulation, and that the charter of the plaintiff company, approved January 10, 1867, in no way exempts it from paying such tax.

"2. That the city council, having the power to assess said tax at the sum of $25.00 per car, and having elected to do so, that the same is legal.

"3. That the temporary injunction heretofore issued in this cause should be dissolved at the cost of the plaintiff."

To the judgment dissolving the temporary injunction and dismissing the action the company and the city prosecuted

writs of error from the court of appeals. That court, in an elaborate opinion, reported in 2 Colo. App. 34, reversed the court below upon its finding that the city was empowered to tax, as well as to license, for police regulation, but affirmed its judgment of dismissal upon the ground that the record was devoid of any showing that the sum of $25.00 was an unreasonable charge for police regulation. Both parties, being dissatisfied with this judgment, bring the case here for review. The company insist that the finding of the court below,—that the testimony offered did not justify a charge of $25.00 for police regulation,—is conclusive as to its right to maintain the action, under the doctrine, announced by the court of appeals, that the city is not authorized to assess a license tax. The city, on the contrary, contends that the court of appeals erred in holding that the ordinance could not be upheld as a legitimate exercise of its power to tax the business of running street railway cars.

In the view we take of these respective contentions, it becomes unnecessary to discuss the validity of the ordinance as a police regulation, or to determine whether, upon the record, the finding of the court below is conclusive upon the fact that $25.00 exceeds the necessary and legitimate expense of issuing the license and providing police supervision. And in this regard, if the court of appeals was correct in holding that the finding of the court below was not an authoritative finding of fact based upon the evidence, but the result of personal observation only, and hence not conclusive upon this review, we fully concur in the conclusions reached by the learned writer of that opinion, that " this court cannot interpose its opinion and guess at a cost of administration, nor take the judgment of the court below, as against the judgment of the city council; " and without sufficient data or evidence, pronounce the ordinance unreasonable as a police regulation.

But upon the more important, and, as we regard it, the decisive, question in the case—" whether the city, under its charter, has the power to tax as well as to license and regu-

late the business of the railway company,"—we are unable to concur with either the reasoning or the conclusion of the court of appeals. That taxation is clearly a legislative prerogative, and may be conferred upon a municipality by that branch of the government in such measure and for such purposes as it may deem expedient, so long as it observes the limitations and restraints of the organic law, is not questioned or denied. Nor do we understand that the language of the charter of 1885, which in express terms confers upon the city of Denver power, " exclusively, to license, regulate and tax any or all lawful occupations," etc., is held to be insufficient to authorize the city to impose the tax in question, if such grant of power is not inhibited by our state constitution. But it is asserted that the charter provision, in so far as it attempts to confer the power to tax, is in conflict with section 3, article 10, which provides :

" All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal."

In this we think the court of appeals is in error. It seems to be almost universally accepted that this, and like constitutional provisions, refer to the levy of *ad valorem* taxes upon property, and do not apply to taxation imposed on privileges and occupations. Sedgwick St. & Const. Law (2d ed., 504–507), referring to similar provisions contained in the constitutions of various states, says :

" In construing these provisions it has been held, in many of the states, that the words ' equal and uniform ' apply only to a direct tax on property ; and that the clause in regard to uniformity of taxation does not limit the power of the legislature as to the objects of taxation, but is only intended to prevent an arbitrary taxation of property, according to kind or quality, without regard to value. Specific taxes have therefore been sustained as a valid exercise of the legislative power."

VOL. XXI—23

Burroughs on Taxation (sec. 54), referring to the same subject, says:

"These provisions, as a general rule, are held to apply to property alone, and not to include taxation on privileges or occupations."

Among the numerous decisions to the same effect, see Desty on Taxation, vol. 1, sec. 36, p. 191; *City of Newton v. Atchison*, 31 Kan. 151; *Ex parte Robinson*, 12 Nev. 263; *Walcott v. The People*, 17 Mich. 68; *City of San José v. S. J. & S. C. R. R. Co.*, 53 Cal. 475; *Ex parte Mirande*, 73 Cal. 365; *Sawyer v. City of Alton*, 3 Scam. 129; *Marmet v. The State*, 45 Ohio St. 63; *Commonwealth v. Moore & Goodsons*, 25 Gratt. 951; *Am. Union Ex. Co. v. City of St. Joseph*, 66 Mo. 675; *City of St. Louis v. Green*, 7 Mo. App. 468, *Davis & Co. v. Mayor & Council of Macon*, 64 Ga. 128.

In the latter case the court had under consideration an ordinance enacted by the city of Macon providing that, among others, retail butchers should pay a license of $50.00 per annum; and that further imposed a tax of $25.00 upon each wagon used in their business. The contention there was that the ordinance was violative of the constitutional requirement that all taxes shall be uniform, and upon this point Justice Bleckley, speaking for the court, says:

"It is insisted, further, that by the tax upon the wagon, the *ad valorem* principle of the constitution is violated. This objection proceeds upon the theory that the wagon is mere property, and subject only to state and county taxes; * * * which taxes have been duly assessed and paid. The complainants contend that having paid all taxes on the value of the wagon as property with which they are chargeable, they cannot be required to pay an additional specific tax to the city upon the same property. But, as already stated, the tax now in question is not a property tax, but a business tax. The wagon is treated as an instrument used in carrying on the business of the complainants within the city, and it has been ruled, and no doubt rightly ruled, that the number and kind of vehicles may be regarded in measuring a tax of

this description.   That the complainants are in no default
to the state and county in respect to taxes upon the value
of the wagon as property is no protection to them against
the business tax now demanded."

We quote thus fully because of the similarity of that case
in principle with the one at bar, and because the language
of the learned justice is pertinent to the contention of coun-
sel for the company in this case.   In the case of *City of St.
Louis v. Green, supra,* the court had under consideration
the validity of an ordinance imposing a tax upon wagons
used in the streets of St. Louis for purposes of traffic, and
for private purposes.   The validity of the ordinance was
attacked upon the ground that it was in derogation of a like
provision of the constitution of Missouri; and in an elab-
orate argument upholding the validity of the ordinance,
Judge Bakewell, who delivered the opinion of the court,
used this language:

" The constitutional provision that all property subject
to taxation in the state shall be taxed according to its value
is undoubtedly binding upon the legislative body when it
exercises the taxing power; but this provision is not vio-
lated when, as in the case at bar, the tax is not a tax pre-
cisely upon the object itself, but rather upon the exercise of
the civil right of using that object. * * * And though im-
posed for revenue, and not for police purposes at all, it is a
tax of the nature of a license, because it is a permission to
do that which, after the passage of the ordinance, it becomes
unlawful to do without having obtained the permission."

The pertinency of this decision to the question we have
under consideration is found in the fact that the tax there-
in upheld was imposed upon vehicles subject also to taxation
as property, and in the further fact that the grant of
power in the charter of the city of St. Louis was identical
with that in the charter of the city of Denver, to wit, "to
license, regulate and tax," etc.

This case, on appeal to the supreme court, was affirmed
in all particulars, except the holding of the court of appeals

to the effect that the ordinance was invalid in so far as it authorized the conviction for a misdemeanor, and a punishment by fine. The case of *Palmer v. Way*, 6 Colo. 106, is relied on by the learned writer of the opinion of the court of appeals as announcing a different doctrine; and the case of *Wilson v. Chilcott*, 12 Colo. 600, accepting the doctrine therein laid down as *stare decisis*, is cited therewith in support of the conclusion reached in that opinion. But since its rendition those cases have been expressly overruled by this court in the case of *City of Denver v. Knowles*, 17 Colo. 204, as being "against the strong current of authority." And the rule announced in the latter case, in so far as it has any application to the question before us, is in conformity with the views herein expressed.

It is clear from the foregoing that the imposition of a tax upon occupations is not governed by the rule of uniformity prescribed in article 10, section 3, of the state constitution, and neither expressly nor by implication is the legislature inhibited thereby from conferring upon the city the power to exact such a tax. And our conclusion is that the legislature, having in express terms conferred upon the city the power to tax, as well as to license and regulate, that the enactment of the ordinance under consideration was a legitimate exercise of that power, and the charge for license therein provided may be enforced as a valid tax.

It is further contended by counsel for plaintiff in error that if the tax be valid, the ordinance cannot be enforced in the manner provided; that it must be collected as other taxes, and not by enforcing a penalty for failure to pay for the license. We cannot give our assent to this proposition. Section 21, article 2, of the city charter provides:

" The city council shall have power to make all ordinances which shall be necessary and proper for carrying into execution the powers specified in this act, * * * and to enforce the same by appropriate fines, imprisonment or other penalties."

In the *City of St. Louis v. Sternberg*, 69 Mo. 289, Norton, J., speaking to this point, said:

"Such ordinances have been uniformly upheld when brought to the attention of this court." In support of the power of municipal corporations to recover fines and penalties against persons not complying with similar ordinances, he cites *Cincinnati v. Buckingham*, 10 Ohio, 257; *Shelton v. Mayor of Mobile*, 30 Ala. 540; *Vandine, Petitioner, etc.*, 6 Pick. 187; *Chilvers v. The People*, 11 Mich. 43;—and adds: " This is not a proceeding on the part of the city to collect the amount of license required by the ordinance, but is instituted to recover a fine for a breach of it committed by defendant in practicing law without such license, and although he may be subjected to the payment of the fine, he would not thereby be entitled to the license."

We are therefore of the opinion that the trial court was correct in holding that the city had the right to exact the sum claimed as a license tax, under the terms of its charter, and upon this ground its judgment should be sustained, and the judgment of the court of appeals affirming the dismissal of the action is affirmed.

*Affirmed.*