CITY OF KANSAS, Appellant, v. BERNARD CORRIGAN, Respondent.

Kansas City Court of Appeals, June 8, 1885.

1. CHARTER OF KANSAS CITY—POWER TO LICENSE, TAX AND REGULATE STREET CARS.—By the amended charter of the City of Kansas (approved March 24, 1875), the legislature *for the first time* granted to said city power " to license, tax and regulate * * * street railroad cars."   Under this authority an ordinance was passed by said city entitled, " An ordinance to license, tax and regulate street railroad cars " (approved May 16, 1882), and defendant was prosecuted under said ordinance for the carrying of passengers on a street railway without a license from said city.   The defence set up by defendant was that he was then and is now an officer of the Jackson County Horse R. R. Co., and that *it* occupies the streets by virtue of ordinances of said city, enacted in 1869, to construct and operate its railroad upon certain streets of said city, and that the rights of said company cannot be impaired or changed by subsequent legislation of said city without the company's assent, and that the city had no power to impose any new burden or condition upon the company as a condition precedent to its right to operate its road.   *Held*, 1. That in 1869 the city had no power to impose such tax, and, therefore, could not, by the ordinance of that year, part with a power it did not then possess.   2. That under the constitution of 1865, a tax upon occupations and professions had to be uniform.   If said city had had the power to impose the license tax, it must have been imposed on all alike, and the legislature itself could not tax otherwise : so that giving to the ordinance of 1869 the construction asked by defendant, it was null and void so far as such construction forms part of it.   Neither the case of *State ex*

rel *City of Kansas* v. *The Corrigan Consolidated Street Railway Co.*, nor that of the *City of Kansas* v. *Thos. Corrigan*, recently decided by the supreme court of this state, are in point in this case, nor do the principles involved in them have any application to this case.

APPEAL from Criminal Court of Jackson County, HON. HENRY P. WHITE, J.

*Reversed with directions as to judgment.*

Statement of case by the court.

This is a case begun by the plaintiff against the defendant before the recorder of the City of Kansas upon the following information:

STATE OF MISSOURI, ⎰ ss.
County of Jackson, ⎱

On information, W. J. Strong, city attorney within and for the City of Kansas, county of Jackson and state of Missouri, complains that, on or about the fourth day of July, 1882, one Bernard Corrigan, being then and there an officer of the Jackson County Horse Railroad Company, to-wit, the superintendent thereof, within the corporate limits of said City of Kansas, did, unlawfully, in his capacity as superintendent of said Jackson County Horse Railroad Company, use and cause to be used a street railroad car for carrying of passengers within the City of Kansas aforesaid on a street railway and horse railroad, wholly and partly within said City of Kansas, without a license for said car and such use thereof from said City of Kansas.

All in violation of an ordinance of said city, entitled "An ordinance to license, tax, and regulate street railroad cars." Approved May 16, 1882.

W. J. STRONG, *City Attorney.*

Judgment was rendered against defendant by the recorder, from which judgment the defendant appealed to the criminal court of Jackson county.

The following are the material facts on which the criminal court tried the cause:

"For an agreed statement of fact in the above enti-

tled cause it is admitted that the City of Kansas is a municipal corporation, and that on May 16, 1882, an ordinance was approved, entitled, 'An ordinance to license, tax, and regulate street railroad cars,' and which is as follows, to-wit :

" 'An ordinance to license, tax, and regulate street railroad cars.

" ' *Be it ordained by the common council of the City of Kansas :*

" ' SECTION 1.   No street railroad car shall be used for the carrying of passengers inside the City of Kansas on any street railway or horse railway, wholly or partly within the city, without a license for the car and such use thereof.   The charge to be paid for each car shall be twenty-five dollars annually.   Any one desiring a license to be granted and issued for any street railroad car shall, after the car has been numbered as directed by the city comptroller, or to his satisfaction, with a large figure or figures painted or securely fastened on each side of the car, pay to the city treasurer the charge for the license, and the treasurer shall give a receipt evidencing the payment and showing the number of the car to be licensed. The receipt shall be delivered to the city auditor who shall at once grant and issue the license, which shall show the number of the car covered by the license, and the date of the expiration of the license.   Each license shall be signed by the city auditor and countersigned by the city comptroller, and shall not be valid till so signed and countersigned, and shall expire on May 1st, which date shall be the end of the year or part of the year for which the same shall be issued.   There shall be a separate license for each car.   The comptroller shall prescribe the form of the license.   To enable the inspector of licenses, weights and measures to perform his duties without undue trouble and time, and drivers or others handling or using the car to know whether the same has been properly licensed, every license shall at all times while in force be kept hanging or fastened up conspicuously inside the car it covers.   In case of loss or destruction of any license before it expires, a dupli-

cate so marked shall, under the direction of the city comptroller, be issued and used in place of the original. The city auditor shall keep a proper register of all such licenses.

" 'SEC. 2. Ten days shall be given from the time this ordinance takes effect for taking out licenses for cars now in use. The charge to be paid for a license of each such car from the taking effect of this ordinance to May 1, 1883, to bear the rate of twenty-five dollars per annum for such time. Street railroad cars, other than those now in use, shall not be used for carrying passengers within the city limits until licensed as aforesaid for the balance of the year in which the use is to commence, up to the next ensuing May 1st, the charge to be paid for any fraction of a year to be at the rate of twenty-five dollars per annum from the time the use is to commence to May 1st next ensuing.

" 'SEC. 3. Every person who shall in any capacity, either as owner or lessee of a street railroad car, or as agent, officer, driver, or employe of the owner or lessee of a street railroad car, or otherwise, at any time after ten days from the approval of this ordinance by the mayor, or the time this ordinance takes effect, use or cause to be used in a street railroad car for the carrying of passengers within the City of Kansas, or any street railway or horse railroad, wholly or partly inside the city, without the car being licensed as aforesaid, or without a license therefor being, during such use, kept hanging or posted up in the car as aforesaid, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than five dollars or more than fifty dollars, such use of any unlicensed car to be deemed a separate offence for every load of one or more passengers carried.'

Sec. 4. (Omitted.)

" 'Approved May 16th, 1882.'

" That the cars used by the Jackson County Horse Railroad Company for the carrying of passengers on a street railway and a horse railroad, wholly or partly

VOL. XVIII—14

within the City of Kansas, have not paid a license to the said City of Kansas, as required by the said ordinance. That the defendant, Bernard Corrigan, on July 4, 1882, was and now is an officer of said Jackson County Horse Railroad Company and its superintendent, and in his capacity as such superintendent has caused to be used a car of said company in manner and form as charged in the complaint; that said Jackson County Horse Railroad Company is a corporation duly incorporated and organized, under the general law of Missouri pertaining to business corporations, in the year 1869; that the said railroad company occupies and uses these streets of the City of Kansas under and by virtue of the following ordinances of said city, to-wit:

" '7075. An ordinance authorizing the Jackson County Horse Railroad Company to construct their road along certain streets.

" 'Approved March the 27th, 1869.'

(" Which ordinance is omitted herefrom. It authorizes said company to construct its railroad along certain streets of Kansas City on certain conditions in reference only to the manner in which the track should be laid, and the condition in which it should be kept. The said ordinance also provided that said company should keep and maintain its vehicles, etc., in good order and repair, and should operate the same at all seasonable times for the use and accommodation of the public).

" That the said Jackson County Horse Railroad Company has been regularly assessed and taxed by the city, as well as the state and county, upon all its property, including its cars, and which taxes have been paid; that this defendant does not personally use or operate any horse railroad car, but that he is the superintendent and manager for said corporation, which owns all its cars, and as such superintendent and manager, but not otherwise, he uses and causes to be used the cars of such corporation, and which cars have not paid any license to the City of Kansas."

Upon the agreed statement of facts the trial court found for the defendant, and judgment was accordingly

rendered, from which the plaintiff has appealed to this court.

JOHN C. TARSNEY, for the respondent.

I.  The ordinance of 1869 was a contract between the City and the Street Railroad Company within the protection of the federal constitution, and could not be impaired or changed by any subsequent legislation of said city without the assent of the company. The city had no power to impose any new burden or condition upon the company as a condition precedent to its right to operate the road. That the right to operate the road is a vested right, and the ordinance attempting to impose a license tax upon the company as a condition precedent to its right to run its cars imposes a new burden and condition on the company. Attempts to take away such vested right impair the obligation of the contract and are, therefore, void. Dartmouth College case. See *Sheldon v. Chicago*, 9 Wall. 50 ; *Hovelman v. K. C. Horse R. R. Co.*, 79 Mo. 632 ; *Dist. Col. v. Wash. R. R. Co.*, 4 Am. and Eng. R. R. Cases, 174 ; *St. Louis v. Mo. P. Ry. Co.*, 13 Mo. App. 524 ; *N. Y. v. 2nd Ave. R. R. Co.*, 32 N. Y. 261 ; *N. Y. v. 3rd Ave. R. R. Co.*, 33 N. Y. 42 ; *State ex rel. City of Kansas v. Corrigan Consolidated St. R. R. Co.*, Supreme Court of Missouri, March, 1885, unreported.

II.  When a law or ordinance makes express exceptions or conditions to the enjoyment of its benefits, no others will be implied. This is a proper case for the application of the maxim, *expressio unius est exclusio alterius*. *Lee v. Evans*. 8 Cal. 429 ; *Bird v. Dennison*, 7 Cal. 297 ; *Watkins v. Wassell*, 20 Ark. 410 ; *City of Kansas v. Corrigan Consol. St. R. R. Co.*, *supra*.

III.  When the object of the city in requiring a license fee is to *obtain revenue*, the validity of such ordinances cannot be upheld under the "*power to regulate.*" Cooley Const. Lim., chapter 16.

IV.  The *defendant* cannot be held criminally responsible for the *failure* of the company to pay the license fee. The general manager *is not the company*.

In order to sustain a criminal conviction the act complained of must be *malum in se*, or be *prohibited by law*, because it is injurious to the public generally or to some individual members thereof, or a failure or neglect on the part of the person accused to perform some duty imposed upon him by law. The act sought to be punished here was an act enjoined on defendant's employer by public ordinance and by contract stipulations, and was for the welfare of the public.

WASH ADAMS and R. H. FIELD, for the appellant.

I. By the ordinance of 1869 the city did not renounce its right to exact a license tax of said company; and such exaction does not impair the contract made by the ordinance. Special immunities and exemptions are not favored, and the law will only recognize them when they are granted expressly or by necessary implication. *To doubt such a grant is to negative it.* Morowitz on Corporations, sect. 153; Cooley Const. Lim. (5th Ed.) top page 487, *et seq.* This doctrine has been applied in cases of the character at bar, to-wit: Where the question was whether even the state had so tied its hands by a private charter granted by the legislature that it could not subsequently exact a license tax for the pursuit of the business of the corporation. *St. Louis v. Bk.*, 49 Mo. 574; *R. R. Co. v. Philadelphia*, 83 Pa. St. 429; *Ferry Co. v. St. Louis*, 107 N. S. 365. The expression of one thing in the ordinance of 1869 did not exclude the right of the city to exact another and distinct thing. "The maxim," quoted by the respondent, "is not the rule of construction applicable to charters. They are to be taken most strongly against the corporations claiming powers under them." *Johnston v. Philadelphia*, 60 Pa. St. 445.

II. The right of the state to exact, or to authorize a city to exact a license fee for the privilege of pursuing business or occupation, is referable to the *police power* of the state rather than to the taxing power. *State ex rel. v. Hudson*, 78 Mo. 302; *Johnston v. Philadelphia, supra*; *R. R. v. Philadelphia, supra*; *Ferry Co. v. St.*

*Louis, supra*; *Frankfort R. R. Co. v. Philadelphia*, 58 Pa. St. 119; *San Jose v. R. R., supra*. Neither the city nor the state can alienate or surrender the police power of the state. *State v. Mathews*, 44 Mo. 523; *Moore v. State*, 48 Miss. 147; *Butchers' Union Co. v. Crescent City*, 111 U. S. 746. But the ordinance of 1869 does not purport to contract away the right.

III. The charter of said city (sect. 1, art. iii, sub. 13, laws 1875, p. 205), gives express power to license, tax, and regulate street cars. It also has power to enforce ordinances. *Goddard case*, 15 Pick. 504; *R. R. Co. v. Lake View*, 105 Ills. 183; *Ex parte Hallowell*, 74 Mo. 395; *Kansas City v. Flanders*, 71 Mo. 284.

IV. It is no answer to say that the corporation should be prosecuted and not its superintendent. The city is limited to the remedies and proceedings authorized by its charter. The remedy resorted to (by information), is the one provided for violation of ordinances, and is exclusive of every other. *State v. Ford*, 70 Mo. 469; *Mono v. White*, 45 Mo. 207; *Castle case*, 2 Croke 644. The agent cannot shield himself from liability behind his principal's liability. *Rounds v. Mansfield*, 38 Maine 586; Ewall's Evans on Agency, side p. 74.

V. That said company paid its annual general taxes on its property is no defence to this action. The two liabilities are wholly distinct. *Both* may be exacted. *St. Louis v. Green*, 7 Mo. App. 468; same case, 70 Mo. 564.

Opinion by HALL, J.

1. In 1875, for the first time, the legislature granted to the plaintiff power "to license, tax and regulate * * * street railroad cars."

The position assumed by defendant in the court below, and upheld by that court, is still maintained by him here, and is, that when the ordinance of March 27, 1869, was passed and accepted by said railroad company, and it constructed its road thereunder, said ordinance became a contract between it and the plaintiff, so that no new condition, no condition other than the conditions in said ordinance mentioned, could be imposed upon it as a

condition precedent to its right to operate its road ; and that the ordinance of May 16, 1882, with a violation of which defendant is charged, imposes such a new condition upon said railroad company, and, therefore, is null and void.

In opposition to defendant's position the plaintiff contends that the ordinance of May 16, 1882, was enacted by the plaintiff, under her authority to license, tax and regulate street railroad cars, as a police regulation ; and that, even if the plaintiff can be held by the ordinance of March 27, 1869, to have intended to part with her police power to regulate street railroads and their operations in her limits, she did not have the right to contract away the exercise of such power, and that the said ordinance is to that extent null and void.

If the plaintiff is right in denominating the license fee a police regulation, clearly the imposition of it by the City of Kansas is valid, whatever may have been her intention in enacting the ordinance of 1869. But we are of opinion that the license fee is a tax and not a police regulation. A license fee, when imposed for the main purpose of revenue is not a police regulation, but it is a tax and can only be upheld under the power of taxation. *The City of St. Louis v. Siegel*, 75 Mo. 146, and cases therein cited. The evident and only purpose of the imposition of the license in this case, is revenue. Same case and authorities ; *Mayor, etc., v. Second Av. R. R. Co.*, 32 N. Y. 273.

2. Admitting, for argument, as defendant contends, that the plaintiff intended, by the ordinance of 1869, to authorize the said railroad company to build and operate its railroad on the conditions alone therein mentioned, and that plaintiff intended to part with the power to impose such a license fee as the one in suit, which we hold to be a tax, imposed under the power to tax street railroad cars, granted to the plaintiff for the first time in 1875 ; the question presents itself, had the plaintiff the power so to do ?

It is clear that the plaintiff had no power to impose a tax upon street railroad cars until the legislature con-

ferred upon her such power "in clear and unambiguous terms." *City of St. Louis v. Laughlin*, 49 Mo. 562; *City of St. Louis v. Clemens, Jr.*, 43 Mo. 494.

This power was thus conferred upon plaintiff in 1875. In 1869, then, she had no power to impose such tax. Without the power to impose such tax how can it be said that she had the authority to part by contract with such power ? It seems clear to us that the plaintiff in 1869, in the absence of all power to impose the tax, could not legally part by contract with the right to exercise such power, should it be conferred upon her in the future by the legislature. If the right to impose a tax must be clearly delegated to a city, it would seem to follow that, where there is no existing right to impose a tax, in the absence of all power expressed or implied upon the subject, she could not validly contract never in the future to exercise such a right, should the legislature grant it to her.

Under the constitution of 1865 a tax upon occupations and professions had to be uniform and fall alike upon all persons engaged in the same business. *City of St. Louis v. Spiegel*, 75 Mo. 147 ; *American Union Express Co. v. St. Joseph*, 66 Mo. 681.

How, then, if plaintiff had had, in 1869, the power to impose the tax in suit, could she have legally contracted not to exercise said power as to said railway company's cars ? The tax had to be imposed upon all alike. The plaintiff could not impose the tax upon one and not upon another company engaged in the same business. The power to impose such a tax in any other than in an uniform manner the legislature itself did not possess, and, therefore, could not have granted to plaintiff. Giving to the ordinance of 1869 the construction asked by defendant, we hold that it was null and void in so far as such construction forms a part of it.

3. The case of *The State ex rel. City of Kansas v. The Corrigan Consolidated Street Railway Company* is not in point in this case. The effect of the condition named in the ordinance of March 27, 1869, passed

upon in that case, was the condition in reference to the company's duty to keep certain parts of the streets in repair. The court held that the city, having contracted with the company that it might use her streets on condition that it would keep certain parts of them in repair, could not afterwards compel the company to do anything more *in that* particular than to keep those parts of the streets in repair ; that she could not compel the company to make the original improvements on those parts of the streets.

In the case of *The City of Kansas v. Thomas Corrigan*, just decided by the supreme court, the court reiterates its ruling in the case just referred to above, and also holds in addition thereto, that " generally speaking, anything in the nature of any offence or misdemeanor can have no existence except as the result of the violation of some plainly imposed duty or rule of action prescribed by a competent law-making power." In the case in hand, the ordinance, with the violation of which the defendant is charged, differs very widely from the ordinance with violating which he was charged in that case. In that case the ordinance prescribed no duty, but the ordinance in this case is full and complete, and even minute in its details, and clearly prescribes a duty, and imposes a penalty for a failure to discharge that duty.

Neither of the cases above cited applies to this case.

In the case of *Mayor, etc., v. Second Av. R. R.* (32 N. Y. 272), cited by defendant, it does not appear that the city of New York lacked the power to impose the tax at the time of the enactment of the ordinance granting the charter to the railroad company. Nor does it appear in that case that there was in force in New York state a constitutional provision requiring such taxes as well as ordinary property taxes to be uniform. For these reasons that case does not appear in point. But if there be a conflict between the views herein expressed and that case, we must adhere to our views for the reasons given in this opinion.

The tax in this case is not open to the objection of being double taxation. Both the *ad valorem* tax and the

tax upon the use of the company's cars as street railroad cars could be exacted. *St. Louis v. Green,* 7 Mo. App. 468; same case, 70 Mo. 564.

For these reasons the judgment of the criminal court of Jackson county is reversed, and the cause, standing upon the agreed statement of facts, is remanded with direction that said court enter judgment herein in accordance with this opinion. All concur.