WILLIAM L. ALLEN v. LEWIS C. WYCKOFF.

1. The act for the protection of game and game fish, approved April 4th, 1878, in providing for greater restrictions and severer penalties upon nonresidents of the state than upon residents, for hunting game, is not contrary to those clauses of the fourteenth amendment of the national constitution which declare that no state shall deprive any person of life, liberty or property, without due process of law, or deny to any person within its jurisdiction the equal protection of the laws.
2. That act does not violate article IV., § 7, ¶ 4, of the constitution of New Jersey.
3. The term "law" in the paragraph just cited, means an enactment of the legislature.

4. The statute of April 4th, 1878, above mentioned, is valid in its application to the act of a nonresident of the state killing game on the property of persons who have formed an association, under the laws of the state, for the protection of game on their own property.

On *certiorari* to the Union Common Pleas.

Argued at November Term, 1885, before Justices VAN SYCKEL and DIXON.

For the prosecutor, *Craig A. Marsh.*

The opinion of the court was delivered by

DIXON, J.  The prosecutor was sued for the penalty of $50 prescribed for nonresidents of this state, who kill quail without complying with the by-laws of the game protective societies, according to " An act for the protection of game and game fish," approved April 4th, 1878. *Pamph. L., p.* 293.  At the trial, he took the ground that the statute was unconstitutional, but his position was not sustained, and a judgment for the penalty was rendered against him, which he now seeks to reverse.

He insists that the act violates the federal and state constitutions, and is also invalid as an unwarranted delegation of legislative power.

Two clauses of the United States constitution are invoked, section 2 of article IV., which declares that " the citizens of each state shall be entitled to all privileges and immunities of citizens in the several states," and part of section 1 of the fourteenth amendment, " No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States ; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

A comparison of the statute under review with the other

game laws of the state shows that with regard to hunting game, greater restrictions are placed upon nonresidents than upon residents, and that the penalties incurred by the former for violating the restrictions imposed are severer than those incurred by the latter.

The discriminations of the statute are not based upon the fact of citizenship, nor does it appear by the record before us that the prosecutor was a citizen either of a sister state or of the United States. Consequently, section 2 of article IV., and so much of the fourteenth amendment as secures the privileges and immunities of the citizens of the nation, are not applicable to the case in hand. It is plain, also, that this statute does not deprive the prosecutor of life, liberty or property. The only clause of the federal constitution, therefore, which on the surface seems to have any pertinency, is that forbidding a state to deny to any person within its jurisdiction the equal protection of the laws.

But even this appearance is dissipated, I think, when we examine the decision of the Supreme Court of the United States in the *Slaughter-house Cases*, 16 *Wall.* 36. It was there argued that a state law, which authorized a corporation to establish stock-yards and slaughter-houses in and near New Orleans, and prohibited all other persons from slaughtering cattle or keeping stock-yards elsewhere, within an area of about eleven hundred and fifty-four square miles around the city, was an infringement of this fourteenth amendment; that the right to use one's land, skill and labor in any lawful business for the acquisition of property was a fundamental civil right which, according to any just theory of government, was entitled to the protection of law; that therefore, while the right might of course be regulated by state legislation, this amendment required that the laws for such purpose should operate equally upon all persons within the jurisdiction; and that the statute securing such a right to some persons, and denying it to others in substantially similar situations, was invalid. But the court decided that laws of this nature were

not within the purview of this clause of the amendment; that it had been framed to remedy the evils arising from the existence of laws in the states where the newly emancipated negroes resided, which discriminated with gross injustice and hardship against them as a class, and that this design must be kept in view in determining the scope and effect of the provision; the learned justice who spoke for the court saying : " We doubt very much whether any action of a state, not directed by way of discrimination against the negroes as a class, or on account of their race, will ever be held to come within the purview of this provision. It is so clearly a provision for that race and that emergency, that a strong case would be necessary for its application to any other." The same general view was again expressed by the court in *Strauder* v. *West Virginia*, 100 *U. S.* 303, 306 ; and although, in the *Civil Rights Cases*, 109 *U. S.* 3, this leading object of the amendment is perhaps not so closely adhered to, in the utterances of Mr. Justice Bradley, who delivered the decision of the court, yet that the court disapproves of the views expressed in the Slaughter-house Cases is by no means asserted, and should not be thence inferred.

Bearing in mind, then, this indication of the scope of the amendment, afforded by the ultimate arbiter of its construction, how can it be said that the statute now under review is interdicted by it ? As a game law, the statute falls into the line of a long series of enactments, beginning in the very early history of the mother country, and continuing uninterruptedly down to the present time; yet it is certain that nothing in these laws gave rise, in the most remote degree, to this constitutional amendment, or is akin to those discriminations out of which it sprung. The statute seems to stand in the same category as the Louisiana act, as an exercise of the police power for the regulation of one of the modes of acquiring property, and, as such, it might be embraced within the terms of the amendment by giving them their widest signification, but restricted as the Supreme Court declares their meaning to be, they do not touch the matter in hand.

No rights of the prosecutor under the federal constitution therefore seem to be infringed.

The prosecutor next insists that this statute fails to comply with article IV., § 7, ¶ 4, of the state constitution, because it attempts to give effect to the by-laws of the game protective societies, without their being inserted in the act. But I understand this paragraph of the constitution to mean, by the term " law," an enactment of the legislature, and not every rule of civil conduct. For example, would a statute declaring that every person violating municipal ordinances, or riding upon a railroad train contrary to the proper regulations of the railroad company, should incur a penalty, need to recite those regulations or ordinances because of this clause? I think not.

Lastly, it is claimed that the statute is invalid because it purports to delegate the legislative power, in that it makes the penal character of acts depend upon the by-laws of the game protective societies.

The case does not show what society it was whose by-laws were not complied with by the prosecutor, nor what the by-laws were; but, by presenting only this general objection, leaves it to be inferred that the society was one having legal authority to make by-laws applicable to the act done by the prosecutor, and, in themselves, valid, and the sole contention is that the legislature cannot render an act done in violation of such by-laws penal.

It seems unnecessary in this case to discuss the general question raised as to the limits of the power of the legislature to subject the civil conduct of persons in the state to the control of other wills than its own. The boundaries of that power are, at best, not very sharply defined, and judicially can be examined with profit only in considering cases which are themselves precise. In the vague state of facts before us, general discussion would be idle. The duty of the court will be done by determining whether any phase of evidence can have been adduced below which would justify the infliction of the penalty prescribed by this statute.

I deem it plain that such evidence might have been pre-

sented. Suppose an association of land-owners formed under a private act of the legislature, for the protection of game on their own property. Such a supposition is not unreasonable, for the brief of the prosecutor's counsel refers to one such act of incorporation in the laws of 1874, page 1055. Whether there are others or not, we cannot judicially determine, since being private acts, courts would notice them only on proof. Or suppose an association for a like purpose organized under the general act authorizing the formation of societies to protect game. *Pamph. L.* 1879, *p.* 169. Then suppose that in violation of the reasonable by-laws of such a society, the prosecutor killed game on the property of its members. Can it be doubtful that a law declaring conduct of this nature punishable is valid ? On these facts the statute does no more than enact that he who, for his own gains, invades the property of others against the will of those having lawful control over it, shall be liable to a penalty. Such a statute is an everyday act of legislation.

No reasons assigned warrant the reversal of the judgment below, and therefore it must be affirmed.