STATE OF NEBRASKA, EX REL. THE SCHOOL DISTRICT OF THE CITY OF AUBURN, RELATOR, V. ROBERT C. BOYD, CITY TREASURER OF THE CITY OF AUBURN, RESPONDENT.

FILED FEBRUARY 19, 1902.   No. 12,521.

1. **Municipal Ordinance:** LICENSE MONEY: OCCUPATION TAX. Whether money raised under the provisions of a municipal ordinance, requiring every person engaged in a certain occupation or business to pay a fixed sum annually into the city treasury, is license money, within the meaning of section 5, article 8, of the constitution, depends upon the substance and purpose of the ordinance, rather than upon its form.

2. ————: ————: ————: POLICE POWER. If the purpose of the city authorities in adopting the ordinance was to raise revenue, then the money exacted is a tax; but, if regulation was the end and object in view, the money results from an exercise of the police power and is license money.

3. **Occupation Tax.** An ordinance having no element of regulation, and showing on its face that the sole purpose of the city authorities in adopting it was to raise revenue, is a tax ordinance, even though the right to engage in the business or calling taxed is made to depend upon paying the tax and obtaining a license. HOLCOMB J., dissenting.

ERROR from the district court for Nemaha county. Tried below before STULL, J. *Affirmed.*

*William H. Kelligar* and *Edgar Ferneau,* for relator.

*H. A. Lambert* and *J. S. McCarty, contra.*

SULLIVAN, C. J.

The only question to be decided in this case is whether certain moneys collected by the respondent as treasurer of the city of Auburn are license moneys, within the meaning of section 5, article 8, of the constitution. The fund in controversy was raised under an ordinance whose object, as expressed in its title, was to impose "an occupation tax on certain occupations or businesses." By the third section of this ordinance it is made unlawful for any person,

firm or corporation to engage in any of the occupations upon which a tax is imposed, until the tax has been first paid and the fact of payment evidenced by the treasurer's receipt, countersigned by the mayor. The fourth section provides penalties for violation of section 3. The contention of counsel for relator is that the money raised under the ordinance is license money, because the right to engage in any of the occupations or lines of business upon which a tax is imposed does not exist until the tax has been paid and receipted for. It is said that the receipt mentioned in section 3 is, in form and substance, a license and that money paid as a condition of obtaining it results, therefore, from an exercise of the power to license, and not from an exercise of the power to lay and collect taxes. Counsel for respondent seem also to think that the character of the fund depends upon whether prepayment of the tax and the issuance of a receipt or license are conditions precedent to the right to engage in any of the occupations mentioned in the ordinance. They say: "The test whether the money in dispute is occupation tax or license money is, whether its payment is made a condition precedent to obtaining a license to conduct the business sought to be taxed. If its payment is a condition precedent to obtaining a license, it is license money; but, on the other hand, if the payment is not a condition precedent to obtaining a license to conduct the taxed businesses, then the money is occupation tax and is properly held by the respondent, for the use and benefit of the city. In determining whether such payment is a condition precedent to obtaining a license, the relator contends that resort alone can be had to the construction of the ordinance in question. This we do not think is true." They then proceed to argue that the penal provision of the ordinance is void, and that if the tax is paid in advance the payment is made voluntarily and not under compulsion. or as a condition precedent to the right to engage in a taxed business or calling. Our view of the matter is that the money in question belongs to the city, not because of the form of the ordinance, or the form of the receipt or license

State v. Boyd.

issued by the treasurer, but because it was clearly and unmistakably the purpose of the mayor and council to exercise the taxing power. The city authorities had power to levy an occupation tax, and if they intended to bring that power into action, the money raised under the ordinance is part of the general revenue of the city, even though payment of the tax and procurement of a license were made conditions precedent to the right to pursue any of the taxed occupations or avocations. The ordinance declares in the first section, and in the title, that its purpose is to tax occupations and businesses. There is no attempt whatever at regulation; nothing is commanded except the payment of the tax, and nothing is forbidden except engaging in a taxed occupation or business before payment has been made. The object of the municipal authorities being to raise revenue, and not to prescribe rules of conduct for the security, convenience or comfort of the public, or to guard and conserve their health or morals, it is entirely plain that the ordinance is referable to the taxing power, and is not a police regulation. *Mays v. City of Cincinnati,* 1 Ohio St., 268; *City of New York v. Second Avenue R. Co.,* 32 N. Y., 261; 1 Desty, Taxation, 305. It must be conceded, as counsel for relator insist, that the mayor and council intended to make payment of the tax and procurement of a receipt or license conditions precedent to the right to engage in any of the taxed occupations or lines of business; but that fact, in view of the clearly expressed purpose of the ordinance, is immaterial, whether the section providing for fines and penalties is void or valid. The writer thinks the section is valid. The charter expressly declares that all ordinances may be enforced by the infliction of fines and penalties (Compiled Statutes, 1901, ch. 14, art. 1, sec. 69, subdiv. 12), and it is not perceived upon what ground this provision is claimed to be in conflict with the higher law. The constitution, it is true, forbids imprisonment for debt, but a tax is not a debt; and, even if it were, the infliction of a fine or penalty would not necessarily result in imprisonment. Our cases upon this point seem to rest on no

principle, and they ignore the fact that penalties are, and have ever been, important incidents of all revenue measures; they run counter to the decisions in other jurisdictions (*City of St. Louis v. Sternberg,* 69 Mo., 289; *Denver City R. Co. v. City of Denver,* 21 Colo., 350; *Campbell v. City of Anthony,* 40 Kan., 652) ; and, since they have not become either a rule of property or procedure, there is no reason why they should be adhered to. In any view of the case, the conclusion reached by the district court is right, and should be

AFFIRMED.

HOLCOMB, J., concurring in conclusion only.

I concur only in the conclusion reached by the chief justice in the foregoing opinion, but find myself wholly unable to agree to many of the views therein expressed. To my mind, the tendency of the opinion is to unsettle, if not directly overthrow, several prior decisions of the court on the same general subject. The sole question, as presented by the record, is whether the moneys in dispute are license moneys within the meaning of section 5, article 8, of the constitution, belonging to the common-school fund, or whether they should be regarded as revenues derived from an exercise of the taxing power alone, and therefore subject to the control of the city of Auburn in defraying its expenses of municipal government. This court has frequently expressed itself on the question of the distinction between a license and an occupation tax. It has also laid down the doctrine that to engage in business declared unlawful, unless a license is first obtained, may be punished criminally, while the collecting of a tax levied solely for revenue purposes can only be enforced as other civil liabilities. With these decisions, and the soundness of the views supporting the same, I am satisfied, and believe they should be followed and adhered to.

In the case at bar the ordinance under which the revenues in controversy were collected, in my judgment, should be construed as an ordinance for the levying and

collecting of an occupation tax. This construction must, I think, result from a consideration of both its form and substance. And I must say that, in my judgment, the form is entitled to consideration as well as the substance; and in doing so I do not wish to be understood as suggesting that form alone is the controlling factor. But to ascertain its objects and purposes, and what is sought to be accomplished by its enactment, we must give heed to the expressions therein contained, and the manner in which given utterance. The ordinance provides for the imposition of an occupation tax only. It contains no suggestion of regulation, or for licensing the businesses sought to be taxed. It contemplates the taxation of businesses or callings that by another ordinance are authorized to engage in the business when licensed. That is, by another and prior ordinance the payment of a license tax is exacted as a condition precedent to the right to engage in such business, and the ordinance in question provides for levying and collecting an occupation tax on such licensed businesses. This alone makes it manifest that the sole object and purpose of the ordinance last enacted, which is under consideration, was to raise revenues for municipal purposes. In short, it is a revenue-producing measure, and is devoid of the elements making it an ordinance for the purpose of licensing and regulating the businesses mentioned, and authorizing the persons licensed to engage in the business only when the license tax provided for has been paid to the proper authority, and a license issued therefor. An occupation tax presupposes a lawful business which should bear a part of the expense of municipal government, while a license tax ordinance declares the business unlawful without a license to engage therein having first been obtained. Call it by whatever name you will, or hide it beneath the most ingenious and skillfully drawn ordinance that may be constructed, if the business is made unlawful, except upon payment of a sum as a precedent condition to the right to engage in such business, and obtaining a license or permit to engage in the business, for which the payment

of a stated tax is required, the money thus derived is license money, to be applied as the constitution directs; and it can not lawfully be diverted from such purposes under the pretense that the ordinance is only for the purpose of collecting revenues. If the license tax thus exacted can not be justified as such, the act requiring its payment would be illegal and void for other purposes.

Section 5, article 8, of the constitution provides: "All * * * license moneys arising under the rules, by-laws, or ordinances of cities, villages, towns, precincts, or other municipal subdivision less than a county, shall belong and be paid over to the same respectively. All such * * license moneys shall be appropriated exclusively to the use and support of common schools in the respective subdivisions where the same may accrue." If moneys are collected under an ordinance providing for licensing different occupations or callings, and as a license tax, it is license money, and no refinement of reasoning can change its character. It seems to me, the majority opinion sets up arbitrary standards by which to measure ordinances imposing license and occupation taxes, and altogether loses sight of the constitutional provision quoted. A license is defined by Webster to be "a permission from authority to do some act; a grant of permission." Bouvier says a license is "an official permit to carry on a business or trade or perform other acts forbidden by law except to persons obtaining such permit." By another authority, when applied to government, it is defined as "an authorization by the government to an individual to do certain acts, or carry on a certain business." Cyclopedic Law Dictionary. How, then, can it be successfully contended that an occupation tax may be levied and enforced by requiring the issuance of a permit or license to do business, and making it unlawful to engage in the business until such tax is paid and a license is issued? This would permit the nullification of the provisions of the constitution, and the collection of the occupation tax by means that are the very essence and substance of a law providing for a license tax.

In *State v. Aitkin,* 61 Nebr., 490, this court has decided: First, the payment of an occupation tax can not be made a condition precedent to obtaining a license to conduct the business taxed; and, second, when a tax is collected or paid as a condition of obtaining a license, it is license money, under the provisions of section 5, article 8, of the constitution. The opinion in that case was but following different prior decisions, and rested upon what is believed to be the application of sound and well-settled principles, proper and necessary in order to give due force and effect to the provisions of the constitution, and which can not, as it appears to me, be successfully assailed. *State v. Wilcox,* 17 Nebr., 219; *State v. Bennett,* 19 Nebr., 191. If the money is collected as an occupation tax, as I am satisfied it was in the case at bar, and as a result of the exercise of the taxing power, merely for the purpose of raising revenues, the right to levy and collect the tax presupposes the right of the party taxed to engage in the business; and the burden is imposed on him by the application of the same general principles underlying the authority to raise revenues for the expenses of government by levying a tax upon those who enjoy its protection and benefits, and only such means may be legally resorted to for the collection of such taxes as are recognized and applied in the collection of public revenues generally.

The provisions in the ordinance under consideration declaring it unlawful to engage in the occupation or calling taxed unless the taxes levied thereon are paid, and providing for arrest and fine upon conviction of a violation of the ordinance by a criminal prosecution, are clearly in excess of the powers of the municipality, and, under repeated decisions of this court, are void and non-enforceable.

In an early case, *State v. Green,* 27 Nebr., 64, the subject first received judicial consideration, and it is there decided: "A village has authority to levy a reasonable occupation tax which conforms to the requirements of the constitution and statute; but such a tax is a mere civil liability to be collected by levy and sale of property and not

by arrest and imprisonment." The distinction between a license and occupation tax, and the means of enforcing the occupation tax and punishing those engaging in business without a license, is made clear. Regarding a license tax it is stated: "Where it is necessary to license a traffic—as the sale of intoxicating liquors—or a particular kind of business which if not licensed and regulated may be used to defraud individuals or the public, the right to punish by imprisonment for a failure to pay the license fee and take out license is unquestioned, because such power is necessary for the preservation of order and welfare of society, but this power does not apply to a mere occupation tax." The doctrine enunciated in the *Green Case* was adhered to and reaffirmed in *Magneau v. City of Fremont,* 30 Nebr., 844, and *Templeton v. City of Tekamah,* 32 Nebr., 542, and *State v. Aitkin, supra.* But it is said that, because the charter of cities expressly declares that all ordinances may be enforced by the infliction of fines and penalties, for that reason an ordinance providing for the levying and collection of an occupation tax may be enforced by the infliction of such punishment, if not complied with. If it is meant by this to say that the criminal processes and powers of a court may be invoked for the purpose of inflicting such punishment, I most earnestly dissent from the proposition. Such a power would, in my judgment, conflict with the paramount law, which declares imprisonment for debt shall not be permitted. It is true, a tax levied for revenue purposes is not a debt, in the strict and technical sense of the word, but it is a civil liability or obligation, to be enforced against the person liable as other civil liabilities, and comes within the letter and spirit of the constitution. There are many civil liabilities which may be created by ordinance, most noted of which are those for raising revenues by general or special assessments; and yet a failure to discharge the obligation so imposed would not justify a resort to criminal prosecutions against the delinquent, even though an ordinance might expressly so provide. The authority to enforce ordinances by the infliction of fines

and penalties, when used in a sense as applying to criminal punishment, must be taken to mean only those violations which involve acts either *mala in se* or *mala prohibita*, and not to all ordinances indiscriminately.

It is said the decisions of this court are in opposition to the authorities in other jurisdictions. An examination of the authorities, however, discloses that they are based on the principles underlying the collection and enforcement of license taxes, and not to revenue-producing acts alone. In principle, when so considered, they coincide with the prior utterances of this court on the same subject.