[Civil No. 1847.  Filed May 4, 1921.]

[197 Pac. 704.]

## JAMES SMITH, Appellant, v. W. P. MAHONEY, Sheriff of Mohave County, Arizona, Appellee.

1. CONSTITUTIONAL LAW—COURTS MAY NOT LIGHTLY SET ASIDE LEGISLATIVE ENACTMENT.—Courts may not lightly set aside a legislative enactment, and every reasonable doubt is to be resolved in favor of the law, and before an act can be declared to be unconstitutional, it must clearly appear that it cannot be supported by any reasonable intendment or allowable presumption.

2. CONSTITUTIONAL LAW—WISDOM OF LEGISLATION FOR LEGISLATURE.—The question of the wisdom of legislation has nothing to do with determining its constitutionality, that question being one for the legislature, and it is of no consequence that the court does not agree with it in that particular.

3. LICENSES—WHETHER ENACTMENT WAS EXERCISE OF POLICE POWER DEPENDS UPON PURPOSE.—Whether an enactment requiring license fees was the exercise of the police power of the state or the taxing power depends upon the purposes of the act.

4. LICENSES—PURPOSE OF ACT TO BE GLEANED FROM NATURAL EFFECT OF LANGUAGE EMPLOYED.—The purpose of a legislative enactment must be gleaned from the natural and legal effect of the language employed in the act, but the court will look beyond the mere title or the bare legislative · assertion that a provision requiring payment of fees is for a license to see and determine the real object, purpose, and result of the act, and ascertain whether it does not in fact provide for a tax, nomenclature not being so essential, where it is claimed that an act is unconstitutional as levying an unequal tax.

5. EVIDENCE — COURT KNOWS THAT TWENTY-FIVE CENTS FOR SHEEP AND GOATS AND FIFTY CENTS FOR CATTLE AND HORSES IS IN EXCESS OF REASONABLE EXPENSE OF ENFORCEMENT OF REGULATION AS TO GRAZING.—The court is bound to know that a license of twenty-five cents per head for each and every head of sheep or goats and fifty cents per head for each and every head of cattle or horses grazed or pastured within tne state, exacted by every nonresident person by laws of 1919, chapter 115, is far in excess of the reasonable expense of the enforcement of any regulation.

6. LICENSES—TAXATION—STATUTE REQUIRING PAYMENT OF LICENSE FOR GRAZING HELD EXERCISE OF TAXING POWER AND INVALID.—Laws of 1919, chapter 115, requiring that nonresidents bringing cattle into the state to graze pay a fee of twenty-five cents each for sheep or goats and fifty cents each for cattle or horses, and making grazing without payment of such license a misdemeanor, was not the exercise of the police power of the state, but the exercise of the taxing power, and was passed for the purpose of raising revenue for the support of the government, and hence violates Constitution, article 9, section 1, which provides that all taxes shall be uniform upon the same class of property.

APPEAL from a judgment of the Superior Court of the County of Mohave. E. Elmo Bollinger, Judge. Judgment reversed and appellant discharged.

### STATEMENT OF FACTS.

The appellant was tried and convicted of a misdemeanor before the justice of the peace for Kingman precinct, in Mohave county, and was sentenced to pay a fine of fifty dollars, and in default of payment to imprisonment in the county jail for a term of twenty-five days. He was committed to the custody of the sheriff of the county to be detained until the fine was paid or such term of imprisonment was served.

The charge against the appellant was that he drove a band of sheep from the state of Utah into Mohave county, Arizona, and there pastured the animals without first having procured a license, as required by chapter 115, Session Laws of Arizona of 1919. The appellant procured a writ of *habeas corpus* to be issued out of the superior court of the county (Mohave), seeking to be released from custody, but upon the hearing the court denied the writ, and dismissed the appellant's petition. From this judgment the appeal is taken. The statute under which the conviction of the appellant was obtained reads as follows:

"An act providing for the licensing of sheep, goats, cattle or horses owned or leased by nonresidents; for the amount of license therefor; prescribing the penalty for failure to procure same; empowering the sheriffs of the various counties to collect said license and providing for the disposition of said fund.

"Be it enacted by the Legislature of the state of Arizona:

"Section 1. Every nonresident person, firm, partnership, association or corporation who may graze, herd or pasture sheep, goats, cattle or horses within the state of Arizona, as either owner, lessee or manager of said sheep, goats, cattle or horses, must annually procure a license therefor from the sheriff, as collector of transient grazing licenses, of each county within which said sheep, goats, cattle or horses are grazed, herded or pastured, and shall pay therefor the amount of twenty-five cents per head for each and every sheep or goats and fifty cents per head for each and every head of cattle or horses grazed, herded or pastured within the state of Arizona.

"Sec. 2. Every nonresident person, firm, partnership, association or corporation who shall engage in the business of grazing, herding, or pasturing of any sheep, goats, cattle or horses, as either owner, lessee or manager thereof, within any county of the state

of Arizona, or who shall graze, herd or pasture sheep, goats, cattle or horses, within any county of said state, without first having procured a license therefor, as prescribed by the preceding section, shall be guilty of a misdemeanor.

"Sec. 3. For the purposes of this act, the sheriffs of the various counties shall be the collectors of licenses.

"Sec. 4. All moneys collected for sheep, goat, cattle or horse grazing licenses during each month, shall, on or before the tenth day of the following month, be paid by the sheriff, as license collector, to the county treasurer of the county wherein said licenses are collected, and shall be by him placed to the credit of the general fund of said county.

"Sec. 5. All acts or parts of acts in conflict with the provisions of this act are hereby repealed."

Mr. Edmond H. Ryan and Mr. D. N. Straup, for appellant.

The Attorney General of the State, Mr. C. W. Herndon, and Mr. S. D. Stewart, County Attorney, for Appellee.

BAKER, J. (After Stating the Facts as Above.)— The appellant attacks the validity of the act of the legislature under which he was convicted as being violative of both the federal and state Constitutions in a number of specified particulars, none of which will be discussed in the opinion except the claim that the act is a revenue or tax measure and offends section 1, article 9, of the state Constitution, because the tax provided for is not uniform and is unequal. Section 1, article 9, reads as follows:

"All taxes shall be uniform upon the same class of property within the territorial limits of the authority levying the tax, and shall be levied and collected for public purposes only."

The state claims that the act is a police measure requiring the payment of a license fee by nonresi-

dents for the privilege of grazing sheep, goats, cattle, or horses within the state of Arizona.

Courts may not lightly set aside a legislative enactment. Every reasonable doubt is to be resolved in favor of the law, and before an act can be declared to be unconstitutional it must clearly appear that it cannot be supported by any reasonable intendment or allowable presumption.

"Courts will approach the question with great caution, examine it in every possible aspect, and ponder upon it as long as deliberation and patient attention can throw any new light on the subject, and never declare a statute void, unless the nullity and invalidity of the act are placed, in their judgment beyond reasonable doubt." *In re Wellington et al., Petitioners,* 16 Pick. (Mass.) 87, 95, 26 Am. Dec. 631.

Nor has the question of the wisdom of the legislation anything to do with determining its constitutionality. That question is for the legislature, and whether the court agrees with it in that particular or not is of no consequence. It is solely a question of power.

Therefore it is our bounden duty to view the legislative enactment under consideration in the light of these great stars and sustain it, unless we are convinced beyond reasonable doubt that it is clearly in conflict with the constitutional provision.

Whether the enactment was the exercise of the police power of the state or the taxing power depends upon the purposes of the act. Thus we find it stated in 22 Am. & Eng. Ency. of Law (second edition), 917:

"The police power must also be distinguished from the taxing power, and the distinction is this: That the taxing power is exercised for the raising of revenue, while the police power is exercised only for the purpose of promoting the public welfare, and though this end may be attained by taxing or licensing occu-

pations, yet the object must always be regulation and not the raising of revenue, and hence the restrictions upon the taxing power do not apply.''

And in Cooley's Constitutional Limitations (sixth edition), page 242, it is said:

''A license is issued under the police power; but the exaction of a license fee with a view to revenue would be the exercise of the power of taxation.''

In another work of the same eminent author, it is said:

''The right of any sovereignty to look beyond the immediate purpose to the general effect neither is nor can be disputed. The government has general authority to raise a revenue and to choose the methods of doing so; it has also general authority over the regulation of relative rights, privileges, and duties, and there is no rule of reason or policy in government which can require the legislature, when making laws with the one object in view, to exclude carefully from its attention the other. Nevertheless, cases of this nature are to be regarded as cases of taxation. Revenue is the primary purpose, and the regulation results from the methods of apportionment that are resorted to in obtaining the revenue. Only those cases where regulation is the primary purpose can be especially referred to the police power. 2 Cooley on Taxation (3d ed.), p. 1127.

The distinction between the exercise of the police power of the state and the taxing power pointed out in the foregoing authorities has been recognized in numerous decisions of the courts holding that a license fee imposed under the guise of the police power was in legal effect a tax. We cite some of the cases without any attempt to exhaust the list. *Ex parte Mayes,* 14 Okl. Cr. 696, 174 Pac. 1181; *Ellis* v. *Frazier,* 38 Or. 462, 53 L. R. A. 454, 63 Pac. 642; *Pittsburgh, C. & St. L. Ry. Co.* v. *State,* 49 Ohio St. 189, 16 L. R. A. 380, 30 N. E. 435; *Muhlenbrinck* v. *Commissioners,* 42 N. J. L. 364, 36 Am. Rep. 518;

*North Hudson County Ry.* v. *Hoboken,* 41 N. J. L. 71; *Mestayer* v. *Corrige,* 38 La. Ann. 707; *Pitts* v. *Vicksburg,* 72 Miss. 181, 16 South. 418; *Livingston* v. *City Council of Albany,* 41 Ga. 21; *State ex rel. School Dist.* v. *Boyd,* 63 Neb. 829, 58 L. R. A. 108, 89 N. W. 417; *City of Kansas* v. *Corrigan,* 18 Mo. App. 206.

So then the question here is this: What is the purpose of this enactment? What is the natural effect of putting it into operation? The fundamentals tell us that the purpose must be gleaned from the natural and legal effect of the language employed in the act. But the court will look beyond the mere title or the bare legislative assertion that the provision is for a license to see and determine the real object, purpose, and result of the act. The nomenclature is not so essential. 6 R. C. L. 237; *Loohner* v. *New York,* 198 U. S. 45, 3 Ann. Cas. 1133, 49 L. Ed. 937, 25 Sup. Ct. Rep. 539 (see, also, Rose's U. S. Notes). It is apparent at first blush that the license provided for in this extraordinary act is imposed for the purpose of revenue, and consequently does not fall within the protection of the police power of the state. It cannot be said, with any degree of confidence, that the primary object of the act is the prevention of some offense or manifest evil, or that it has for its primary aim the preservation of the public health, morals, safety, or welfare. It shows upon its face that regulation is not its purpose, but that revenue or undue restriction in the interest of others not embraced in the class designated is the aim in view. We say this cautiously and without any intent to reflect upon the motives of the legislature in adopting the law. We are bound to know that the license of twenty-five cents per head for each and every head of sheep or goats and fifty cents per head for each and every head of cattle or horses grazed or pastured within the state of Arizona, exacted of every nonresident person, firm, partnership, association, or

corporation, is far in excess of the reasonable expense of enforcement of any regulation. Certainly this is the case when such license must be paid to the sheriff of each and every county in the state where such animals may be grazed or pastured. A very usual method of exercising the police power in the regulation of business enterprises is by the requiring of license for engaging in certain lines of business. 22 Am. & Eng. Ency. of Law (2d ed.), 935. But we do not think the law under consideration is of that character. The license exacted is a burden laid upon the animals *per capita.* It is a property tax. The burden so imposed does not, as said in *Pittsburgh, C. & St. L. Ry. Co.* v. *State, supra,* "differ in principle from a fixed sum, levied upon all the farmers of the state, for each acre of land of which they may be seized, or each head of horses or other livestock that they may own. In both instances the tax is levied upon property, . . . " and not upon business. There is not even a hint or suggestion throughout the entire body of the act that the intention was to control or regulate the grazing or pasturing of animals in the state. It does not purport to be an inspection law. The only requirement is the payment of the license fee.

The case of *State ex rel.* v. *Ashbrook,* 154 Mo. 375, 48 L. R. A. 265, 77 Am. St. Rep. 765, 55 S. W. 627, involved the constitutionality of an act of the legislature of Missouri (Laws 1899, p. 72), known as Department Store Bill. In discussing the question whether the act provided for the imposition of a license fee or a tax the court said:

"While a most onerous license fee by name is imposed, no police inspection, supervision or regulation is provided, nor is any standard set for the applicant to establish, or that he agrees to attain or maintain, but any and all persons engaged in the business des-

ignated in the act, without qualification or hindrance, may come, and a license on payment of the stipulated sum to the commissioner named in the act will issue, to do business, subject to no prescribed rule of conduct and under no guardian eye, but according to the unrestrained judgment or fancy of the applicant and licensee. The applicant is simply required to pay his money and take out his license. That is the beginning and the ending of the police supervision and control over him or his business, so far as concerns the act in question."

This is the exact situation here. Any nonresident "without qualification or hindrance" may come, and on payment of the stipulated sum per head a license will be issued to him, and he may graze his animals "subject to no prescribed rule of conduct and under no guardian eye, but according to his unrestrained judgment or fancy."

And in *Royall* v. *State of Virginia,* 116 U. S. 572, 29 L. Ed. 735, 6 Sup. Ct. Rep. 510, it is said:

"That the party complying with the statutory conditions is entitled as a right to the license is conclusive that the payment is a tax laid for revenue and not an exaction for purposes of regulation."

It is suggested that the clause which makes the grazing a misdemeanor, unless a license is first procured, fixes the purpose of the act as a police measure, but we cannot agree with this view. The clause does not deprive the license of the salient characteristics of a tax. That is only a convenient means provided to hasten the collection of the tax. It is clear to us that the enactment was not the exercise of the police power of the state, but the exercise of the taxing power, and was passed for the purpose of raising revenue for the support of the government.

That the tax provided for by the act is wanting in uniformity, and is unequal as applied to the same class of property is plainly discernible. A resident

stock grower or sheep owner grazes or pastures his animals within the state without being required to pay the tax which the act imposes. Only the non-resident stock grower or sheep owner is required to pay the tax. This palpable discrimination robs the law of the indispensable requisite that taxes shall be uniform upon the same class of property within the jurisdiction of the body imposing them. There can be no possible advantage in elaborating this self-evident truth. It is sufficient of itself to show the vice of the law. But if there needs further evidence of the inequality of the tax imposed, we have it in the fact that the law, if enforced, would result in double taxation. Under our general revenue law the animals of the nonresident would be assessed, and he would be required to pay taxes thereon according to their value, and yet in addition to this taxation he would be compelled, as a condition precedent, to grazing his stock within the state, to pay the tax required by the act. What fairness or equality can there be in a system of taxation which produces such a result?

We are forced to the conclusion that in the particulars hereinbefore pointed out the statute is unconstitutional, in that it denies uniformity and equality of taxation. And such is the conclusion reached by other courts upon substantially the same character of legislation. In *Reser* v. *Umatilla County,* 48 Or. 326, 120 Am. St. Rep. 815, 86 Pac. 595, it was ruled that a law imposing a burden of twenty cents per head on sheep owned by nonresidents who brought them within the state for pasturage, and further prescribing a payment of five cents per head for each county through which they might be driven, was a means of raising a revenue, and therefore violative of the Constitution, because the tax was unequal. In *Kiowa County* v. *Dunn,* 21 Colo. 185, 40 Pac. 357, it was held

that an act of the legislature of Colorado, providing that nonresidents grazing cattle in any county of the state should pay a certain fixed sum per head in lieu of all taxes, was void because in violation of the constitutional provision that all taxes shall be uniform upon the same class and subject. The Supreme Court of Idaho, in the case of *State* v. *Butterfield Live Stock Co., Ltd.,* 17 Idaho, 441, 134 Am. St. Rep. 263, 26 L. R. A. (N. S.) 1224, 106 Pac. 455, held an act of the legislature void which provided that all persons who bring or cause to be brought sheep from any other state or territory into the state of Idaho for grazing purposes must pay a grazing fee of five cents per head.

The state, in support of the contention that the act is a valid subsisting law, cites us to a number of cases upholding what are called "Fish and Game Laws." *McCready* v. *Virginia,* 94 U. S. 391, 24 L. Ed. 248; *Geer* v. *Connecticut,* 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. Rep. 600 (see, also, Rose's U. S. Notes); *Chambers* v. *Church,* 14 R. I. 398, 51 Am. Rep. 410; *State* v. *Tower,* 84 Me. 444, 24 Atl. 898; *Allen* v. *Wyckoff,* 48 N. J. L. 90, 57 Am. Rep. 548, 2 Atl. 659; *State* v. *Ashman,* 123 Tenn. 654, 135 S. W. 325; *People* v. *Setunsky,* 161 Mich. 624, 126 N. W. 844. But there is a wide difference between these cases and the case at bar, and the principles involved and discussed are entirely dissimilar. There was no tax levied upon the property of the nonresident by the laws construed in the cases cited. The levying of an unequal and discriminatory tax upon the property of the nonresident is the distinguishing feature in the law we have been considering. It is the vice of the law. The cases referred to only decide that the citizens of one state are not vested, by the clause of the United States Constitution (article 4, section 2), with any interest in the common property of the citizens of an-

other state (fish, game, oysters, etc.), and that the state in the exercise of the police power may prohibit the taking of these things by a nonresident altogether, or may impose terms favorable to its own citizens as against such nonresident for the privilege of participating in the enjoyment of these natural resources of the state. Freund, Police Power, § 712. But it does not follow from these decisions that the state may levy an unequal and discriminatory tax on property owned by a nonresident.

The case of *State* v. *Smith,* 71 Ark. 478, 75 S. W. 1081, also cited by the state and much relied on, involved a statute which was in no sense a revenue measure. It was a police regulation. That alone is enough to show that the case is not in point. No grazing fee was required by the Arkansas statute, and no tax was laid upon the property of the nonresident.

We are clearly of the opinion that the act involved in this case, and under which the appellant was convicted, is unconstitutional and void, and the judgment of the lower court is therefore reversed, and the appellant is discharged.

ROSS, C. J., and McALISTER, J., concur.